## LINDA DELOTT *v.* LORETTA RORABACK

LOISELLE, BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued October 11, 1979—decision released January 1, 1980

*John W. Sitarz,* for the appellant (defendant).

*Edward J. Daly, Jr.,* with whom, on the brief, was *Christina G. Dunnell,* for the appellee (plaintiff).

PARSKEY, J. This action to recover damages for personal injuries was originally instituted in the Court of Common Pleas. On July 1, 1978, by virtue of the transfer of jurisdiction of the Court of Common Pleas to the Superior Court; General Statutes § 51-164s; it became a Superior Court case. The case was tried to the jury which returned a plaintiff's verdict. From the judgment rendered upon the verdict the defendant has appealed.

Before the beginning of the trial the court permitted the plaintiff to file an amendment to her complaint which substituted for her original claim of $15,000 damages a statement that the amount of money in controversy exceeds $7500. The latter claim was authorized both by General Statutes § 52-91 and Practice Book, 1978, § 131. The court, in allowing or denying an amendment to the complaint, has a broad discretion. Such a ruling will not be reversed in the absence of a clear showing of abuse of discretion. *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 454, 352 A.2d 291 (1974). No such showing has been made here.

The defendant challenges the charge to the jury in three respects. First she claims that the court erred in its comment on her counsel's argument to the jury. Although the argument of counsel was not recorded it is undisputed that in his summation defense counsel stated that there was a "foul odor

of greed" that permeated the case. Upon the conclusion of the final argument and in the absence of the jury, counsel for the plaintiff strenuously objected to those remarks and requested an appropriate instruction. The trial court observed that in its opinion the remarks were totally inappropriate and that the jury were going to be charged accordingly. Subsequently the court charged the jury on this subject as follows: "Now, I didn't find anything in the case that caused me to have any reservations. I didn't find any odor about this case, that Mr. Sitarz spoke about. I thought it seemed to me a fairly straightforward, standard kind of case. However, you're the ones who are going to evaluate all the evidence. It's not my project, or my position to evaluate, nor Mr. Sitarz'. He only looks at it from his point of view. You're going to look at it from the point of view of citizens on a jury, to determine whether you believe the people here, whether you believe the plaintiff, the doctors, and how you evaluate that."

Because liability was stipulated the only issue in the case pertained to damages. As a result of the impact the plaintiff was thrown forward and backward in the driver's seat of her car. She did not complain of injury at the scene of the accident but later at work felt achy within an hour or two and thereupon visited her family physician. The physician saw her on ten occasions over a period of four months and concluded, on the basis of her subjective complaints and his objective finding of muscle spasm, that the plaintiff had sustained a strain of her neck and of her lower and upper back. She was also seen on seven occasions over a period of two and a half years by an orthopedic specialist. This specialist concluded, on the basis of the plain-

tiff's subjective complaints of pain in conjunction with the swayback condition of the plaintiff's spine, that she had a 5 to 10 percent permanent partial disability of her lower back. The plaintiff testified that she was out of work for one week following the accident, that she returned to work half-time the second week and was able to resume work full-time the third week, although occasionally she had to leave work early due to pain. The defendant offered no medical evidence during the trial.

The thrust of the defense counsel's argument to the jury was that any claim for damages based exclusively or predominantly on subjective complaints of pain was probably fabricated and fraudulent. This strongly suggests to the jury that pain and suffering, unless supported by objective findings of medical experts, is not a proper element of damages in a personal injury case. There is no basis for such a suggestion. A plaintiff may recover damages in a personal injury action for pain and suffering even when such pain and suffering is evidenced exclusively by the plaintiff's subjective complaints. *Hook* v. *Dubuque,* 153 Conn. 113, 115, 214 A.2d 376 (1965). To suggest otherwise, especially in the manner done here, is not only an incorrect statement of the law but is also totally inappropriate. While counsel is free to comment to the jury about the nature of the complaints or even to suggest in a given case that the complaints may be exaggerated, it is inappropriate for counsel to suggest that a claim of injury is fabricated or fraudulent unless there is a clear basis in the evidence for such an allegation. There is no such basis here.

The credibility of a witness is for the jury to determine and such determination is not to be interfered with by the trial court in its charge.

*Enlund* v. *Buske,* 160 Conn. 327, 330, 278 A.2d 815 (1971); *Burke* v. *Fancher,* 151 Conn. 640, 642, 201 A.2d 461 (1964); *Quednau* v. *Langrish,* 144 Conn. 706, 711, 137 A.2d 544 (1957). This does not mean, however, that where the situation warrants appropriate comment the trial judge must remain silent. "As we have often pointed out, a judge in our courts is not an umpire in a forensic encounter of advocates, but is a minister of justice. It is his duty, within the limitations imposed by the constitutional provision concerning trial by jury, to take every reasonable step to see that justice is done. It is not only his right but often his duty to comment upon the evidence." *Heslin* v. *Malone,* 116 Conn. 471, 477, 165 A. 594 (1933); *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 580, 102 A.2d 345 (1954); *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 501, 101 A.2d 500 (1953). Where a particular situation calls for a curative instruction the giving of such instruction will not be questioned so long as the trial court does not invade the province of the jury in doing so. *Ladd* v. *Burdge,* 132 Conn. 296, 298, 43 A.2d 752 (1945). Read in context, the trial court's instruction in this case was antiseptic without being corrosive.

The defendant next challenges the court's supplemental charge concerning loss of earning capacity with respect to the plaintiff's Tupperware business. The court instructed the jury that they were to regard any net profits from this business as merely evidence of earning capacity and that if they found there were no real net profits then that business should not be considered in terms of the plaintiff's earning capacity. The defendant's position is that the issue should not have been given to the jury because the plaintiff's income tax returns

showed a net loss for the years 1973 and 1974 and, therefore, there was no basis in the evidence from which the jury could determine a loss of earning capacity with respect to the Tupperware business. We do not agree. The plaintiff testified that she started working for Tupperware in March, 1973, some three months before the accident. At that time she demonstrated Tupperware products at private house parties approximately three times a week. After the accident she cut down to one party a week and eventually, in January, 1975, she stopped completely because of her injuries. She testified that although she sustained losses for income tax purposes during the years in question, had she been able to demonstrate her wares as frequently as she did before the accident her business would have been profitable.

Loss of earning capacity is an appropriate element of compensable damages for personal injuries. Where the plaintiff is engaged in a business, the loss of net profits affords some basis for measuring such loss. *Moiger* v. *Connecticut Ice Cream Co.*, 146 Conn. 551, 553-54, 152 A.2d 925 (1959); *Ball* v. *Pardy Construction Co.*, 108 Conn. 549, 551, 143 A. 855 (1928). The evidence, however, must be of such nature as to remove the issue from the realm of speculation. *Mazzucco* v. *Krall Coal & Oil Co.*, 172 Conn. 355, 360, 374 A.2d 1047 (1977); *Doeltz* v. *Longshore, Inc.*, 126 Conn. 597, 601, 13 A.2d 505 (1940). It is not necessary that the amount of the loss be established with exactness so long as the evidence affords a basis for a reasonable estimate by the jury. *Mazzucco* v. *Krall Coal & Oil Co.*, supra. If the jury in the present case believed the plaintiff's testimony that before the accident she held three Tupperware demonstration parties a

week, the reasonable inference which they could draw from the evidence of earnings and relative net losses during 1973 and 1974 would have permitted them to arrive at a reasonable approximation of some loss of earning capacity from the plaintiff's inability to engage in the Tupperware business. The court's supplemental charge in this respect was correct.

The defendant also mounts a flank attack on the court's charge with respect to the collateral source rule. The plaintiff received physical therapy treatments free of charge at her place of employment. The court instructed the jury that the fact that the plaintiff did not have to pay for this treatment should not work to benefit the defendant. Recognizing that ordinarily a plaintiff would be entitled to recover the reasonable value of such treatments; *Gorham* v. *Farmington Motor Inn, Inc.*, 159 Conn. 576, 579, 271 A.2d 94 (1970); the defendant, relying on *Roth* v. *Chatlos*, 97 Conn. 282, 116 A. 332 (1922), claims that the collateral source rule should not be applied in this case because the physical therapy could just as easily have been administered by the plaintiff at home and, therefore, taking the therapy at the place of employment was not reasonably necessary. The short answer to this claim is that the plaintiff need establish only that the services are necessary and that the value is reasonable. Id., 287. Furthermore, in the present case there was evidence that the plaintiff's doctors recommended that the plaintiff receive physical therapy both at work and at home. The defendant gains nothing from this attack.

Arthur Keefe, the plaintiff's family physician, testified for the plaintiff. He brought with him

medical records from June 12, 1973, three days before the accident, through November 7, 1977. On cross-examination he testified that he treated the plaintiff on June 12, 1973, but on further inquiry refused to identify the ailment. In the absence of the jury Keefe testified that on June 12 he treated the plaintiff for a disease, but that at the date of the accident the plaintiff was not suffering from any disease, disability or physical defect. Defense counsel requested permission to ask, in the presence of the jury, whether Keefe treated the plaintiff for any disease three days before the accident, fully expecting an affirmative response. Counsel disclaimed any interest in the details of the ailment, but stated that he wanted the question and answer on the record for the purpose of impeaching the plaintiff's credibility based on her negative response to a disclosure interrogatory. In that interrogatory the plaintiff was asked whether she suffered from "*any* . . . disease prior to *and* at the time of this accident." (Emphasis added.) The trial court granted the request but limited the inquiry to serious or disabling diseases. When asked before the jury, Keefe denied that on June 12, 1973, he was treating the plaintiff for any disabling or serious disease, disability or defect.

At no time did defense counsel request that the doctor's records be examined by the court in camera or be marked for indentification and sealed. Nor did he suggest that his inquiry was designed to impeach or test the credibility of Keefe.

The stated purpose of the inquiry was impeachment of the plaintiff based on her response to an interrogatory; if the question put to the doctor did not serve that purpose it was irrelevant. The inter-

rogatory in question did not seek from the plaintiff a medical case history from birth. It was limited to diseases the plaintiff had both prior to and at the time of the accident; in other words, those diseases of a persistent or recurring nature. The fact that Keefe treated the plaintiff on June 12, 1973, for an ailment which was no longer present on the date of the accident would not serve the stated purpose of impeachment and therefore was immaterial. The trial court has broad discretion in determining the relevancy of evidence. *State* v. *Schaffer,* 168 Conn. 309, 317, 362 A.2d 893 (1975). In the circumstances here the court's limitation on the defendant's inquiry, even if erroneous, was harmless. *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976); *State* v. *Annuziato,* 169 Conn. 517, 524, 363 A.2d 1011 (1975).

Finally, the defendant challenges the trial court's refusal to permit the defendant to inquire whether on the day of the accident the plaintiff was wearing a seat belt. The court's ruling was correct. In any action to recover damages for negligently causing personal injury it is presumed that at the time of the commission of the negligent acts complained of the injured party was in the exercise of reasonable care. General Statutes § 52-114. If the defendant wished to rely on contributory negligence as a defense, she had to plead it affirmatively. The defendant's failure to file an affirmative defense in this case precluded any inquiry on her part into antecedent acts of negligence by the plaintiff. *Pawlinski* v. *Allstate Ins. Co.,* 165 Conn. 1, 6–7, 327 A.2d 583 (1973). We therefore need not consider the nature and extent of the duty, if any, of a driver to wear a seat belt; see *Remington* v. *Arndt,* 28 Conn. Sup. 289, 259 A.2d 145 (1969); nor are we required

to inquire whether under *Mahoney* v. *Beatman,* 110 Conn. 184, 147 A. 762 (1929), the so-called "seat belt defense" is available to the defendant in any event.

There is no error.

In this opinion the other judges concurred.