[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION TO SET ASIDE THE VERDICT
This case concerns an automobile accident. It was tried before a jury of six. A verdict was recorded in defendant's favor.
After timely objection to defendant's counsel's closing argument, plaintiff moved to set aside the verdict.
The area where this accident occurred involved a "V" shaped intersection. The defendant was at a stop sign. He looked backward to his right to see if any cars were coming from the other road, which did not have a stop sign. Defendant testified that, while still looking backward, he moved his car forward and collided with the plaintiff. He further testified that he then exited his car and apologized to the plaintiff. The plaintiff, having stopped, had moved forward and stopped again, as the person in front of him was executing a left-hand turn into a driveway. Regardless of any other testimony, it is difficult to see how a jury could reasonably find that the defendant was not at fault when, by his own admission, he was looking backward, with his car in motion, when he "rear-ended" the plaintiff. In view of the other claims in plaintiff's motion, it is not necessary for this court to resolve this question.
The issues raised which concern defendant's counsel's closing argument are dispositive. In a chambers conference concerning the charge to the jury, defendant's counsel posited an argument whereby he would make reference to that which was in the plaintiff's mind. The court indicated that this kind of speculation was completely inappropriate, and that no such argument was to be made. Despite this warning, defendant's counsel did, in fact, make this argument to the jury. As background, it is noted that the factual basis for the argument was that plaintiff was involved in a second automobile accident approximately one week following the accident which was the subject of the jury trial. Defendant's counsel argued as follows:
 So what happened? Do you think the plaintiff had time to think about this from when he was taken from the scene by ambulance to when he got to the emergency room and said, 'Gee, you know, I'll probably be found at fault for this accident. If that happens, that is going to affect my recovery from the accident CT Page 9470 that just took place five days before.' So what does he do? He cooks up this story. He injured his chest. Take a look at the report. Any reference to a chest injury in that report.
Transcript, p. 36.
At the close of argument, the court responded as follows:
 THE COURT: Thank you counselor. In view of the fact that the arguments took until eleven thirty, I feel that I should give you a recess before I charge you on the law. When I charge you on the law, I will give you general instructions that I wish you to apply to this case. But in view of the fact that there were some objections during the closing arguments, there are just a few things that I would like to mention to you now while it's fresh in all our minds.
 The first thing that I want to, I don't think I have to tell you this, I think it's probably pretty clear to you, that lawyers take these cases very seriously. And they become very wrapped up in their cases. And sometimes because of their zeal, they might say things that the Court would not think is appropriate. So the things that I would like to point out to you with that in mind, and in view of the objections. There is number one, the measurements are the measurements in evidence in accordance with your recollection. Not what anybody else claims to think or know. I would also like to tell you that it is not appropriate for the lawyers to give you their personal opinion as to what they think happened in the case. Because as you know, it's not my opinion or their opinion or anybody's opinion but yours when you find the facts. I would also like to tell you that it's not appropriate to suggest to you that Mr. Proto was scheming about ways to profit in this case while in the ambulance on the way to the hospital after the second accident, because that is pure speculation. And when I give you the law, I am going to instruct you that you are not to speculate. But that you are to arrive at the facts by what you heard in the evidence. And at this time, we are going to take a break. And we will reconvene at ten of twelve.
Transcript, pp. 43-44.
Plaintiff's and defendant's counsel then objected as follows:
 MR. LAHR [defendant's counsel]: Your Honor, I would CT Page 9471 put an objection on the record with respect to the Court's comments concerning my alleged representations that it was a scheme. I indicated clearly that it was for the jury to decide on the evidence with respect to that issue. It was only something that was suggested as to that issue.
 THE COURT: Your objection may be noted. I would just like to note for the record that yesterday in chambers when we talked about that kind of thing, it was specifically mentioned that neither counsel was to speculate what was going through anybody's mind. Because that issue came up in chambers. And I specifically instructed you not to suggest what was going through anybody's mind. So at this point I felt it was necessary to give the instruction. I hope that I have softened it in your mind by attributing it to over-zealousness. I had to give the instructions. Anything else?
 MR. STEVENS [plaintiff's counsel]: If your Honor please, I would just observe for the record that it was actually Attorney Lahr had agreed not to do that. Bud did it anyways.
MR. LAHR: No, that is —
MR. STEVENS: That's my recollection.
 MR. LAHR: That is dead-wrong. We talked about attributing fault with respect to the second accident. There was no discussion whatsoever about what was in people's minds.
 THE COURT: Well, that's not my recollection. My recollection is that somebody was suggesting, Mr. Lahr was suggesting the argument he might make. And having outlined it to the Court, the Court indicated that it was absolutely not appropriate to speculate what was running through someone's mind. And I specifically asked you not to do that. In any event, the record is this. It's here. It's down on paper. What happened happened. Ten of twelve.
Transcript, pp. 44-45.
In Delott v. Roraback, 179 Conn. 406, 426 A.2d 791
(1980), the court's curative instruction with regard to defense counsel's final argument was challenged on appeal. In a situation similar to that herein, defendant's counsel suggested that plaintiff's claims of injury were prompted by greed. CT Page 9472 Specifically, counsel argued that there was "a foul order of greed" permeating the case. Id. 407-8. "The thrust of the defense counsel's argument to the jury was that any claim for damages based on subjective complaints of pain was probably fabricated and fraudulent." Id. 409, see also Meadows v. Vignault,152 Conn. 708, 206 A.2d 840 (1965). In this case, defendant's counsel's remarks with regard to the scheme he suggested plaintiff was fabricating in the ambulance are tantamount to saying there was a "foul odor" about plaintiff's claims. The Delott court found the trial court's curative instruction to be appropriate in view of counsel's remarks.[1]
There is another point against which defendant's counsel's remarks must be measured. This involves the question of ignoring the court's specific order not to make the argument now challenged.[2] In McKee v. Erikson, 37 Conn. App. 146,654 A.2d 1263 (1995), the court addressed the issue of counsel's disobeying the trial court's order not to make a particular argument. In that case, as in the present case, the defendant's counsel claimed that he did not disobey the court's order in closing argument, and that the argument made had a sufficient basis in the evidence. In McKee, the subject of the improper argument were conclusions as to speed that defendant's counsel urged the jury to make based on skid marks. The court ruled this improper absent expert testimony. The case herein presents an even clearer case — there was no testimony as to what was in the plaintiff's mind, let alone any evidence that he was contemplating fraud. The McKee court stated that:
 It is axiomatic that parties may not disregard a trial court's rulings because they disagree with those rulings. Rather, the parties must abide by the trial court's rulings and preserve those issues for appellate review. To allow a party to disregard the rulings of the trial court that it believes are legally incorrect would invite chaos, undermine the authority and ability of the trial court to conduct trials in an orderly fashion, and would undermine the ability of an appellate court to review the trial court's action.
McKee at 151-2.
For the foregoing reasons, the plaintiff in this case was deprived of a fair opportunity to have the jury decide the issues in an atmosphere free of passion and prejudice. The plaintiff's motion to set aside the verdict is hereby granted, CT Page 9473 and a new trial ordered.
Dunnell, J.