### DEANN K. SEYMOUR v. LYNNE M. CARCIA (8812)

SPALLONE, LANDAU and HEIMAN, Js.

---

Argued January 10—decision released April 16, 1991

*Philip J. O'Connor,* with whom were *Steven Seligman* and, on the brief, *Lester Katz,* for the appellant (defendant).

*Kathryn Calibey,* with whom was *John Houlihan,* for the appellee (plaintiff).

SPALLONE, J. The plaintiff brought this action to recover for injuries sustained in a motor vehicle accident. The jury returned a verdict in favor of the plaintiff in the amount of $176,081, which the defendant considered excessive, contrary to law, and against the evidence. The defendant consequently appealed from the trial court's decision accepting the verdict.

On appeal, the defendant claims that the trial court (1) improperly accepted the verdict because the evidence was insufficient to support the jury's award of future economic damage, (2) improperly submitted the issue of punitive damages to the jury, (3) improperly refused to instruct the jury regarding apportionment of negligence, and (4) improperly accepted the verdict because it was excessive. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On March 6, 1987, the defendant visited a restaurant with some friends. During the ensuing three hours at the restaurant, the defendant drank from four to ten twelve ounce glasses of beer. The defendant then left the restaurant, and drove her car west on Route 44 in Avon. The plaintiff, a passenger in a car driven by Joseph Anastasio, was being driven in an easterly direction on Route 44 at about forty to forty-five miles per hour. The speed limit on Route 44 was forty-five miles per hour. As Anastasio's automobile entered an intersection, the defendant made a left turn, crossed into the eastbound lane and collided with Anastasio's automobile.

As a result of the collision, the plaintiff suffered injury to the cervical, dorsal and lumbosacral regions of her spine. She was treated for those injuries continually from the time of the accident to the time of the trial. Expert testimony established that the plaintiff has a 15 percent permanent disability of the lumbosacral region.

The jury awarded the plaintiff $8125 for past economic loss, $68,372 for future economic loss, $3750 for past noneconomic loss, $54,000 for future noneconomic loss, and $41,834 in fees and costs, for a total award of $176,081. The court accepted the verdict and denied the defendant's motion to set aside. The court later

granted the defendant's motion to open the judgment for the purpose of effecting a reduction in the verdict and rendered a corrected judgment in the amount of $172,956. The defendant then brought this appeal.

The first issue raised by the defendant is whether the trial court improperly accepted the verdict because there was insufficient evidence to support the jury's award for future economic loss. Future economic losses include, inter alia, all reasonable and adequately proven future medical expenses, such as the reasonable expense of physicians, medication, and medical appliances, and loss of future earning capacity. The defendant's claim is based primarily on the contention that the evidence presented did not prove future economic loss with any degree of certainty and therefore impermissibly left the jury to base its award on surmise and conjecture. We disagree.

" 'In awarding future medical expenses, a jury's determination must be based upon an estimate of reasonable probabilities, not possibilities. *Jerz* v. *Humphrey,* 160 Conn. 219, 224, 276 A.2d 884 (1971). Such evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . .' *Reilly v. DiBianco,* 6 Conn. App. 556, 575, 507 A.2d 106, cert. denied, 200 Conn. 804, 510 A.2d 192, 193 (1986)." (Citations omitted.) *Rogers* v. *Delfino,* 13 Conn. App. 725, 729, 539 A.2d 156 (1988). It is not necessary that the amount of the loss be established with precision as long as the evidence affords a basis for a reasonable estimate by the jury. *Delott* v. *Roraback,* 179 Conn. 406, 411, 426 A.2d 791 (1980).

The defendant asserts that damages for future medical expenses may be established only through competent medical expert testimony. She draws an analogy between the evidence required in the context of medical causation, where medical expert testimony is

required to show that the act caused the plaintiff's injuries, and the evidence required to prove future medical expenses. See, e.g., *Grody* v. *Tulin,* 170 Conn. 443, 449, 365 A.2d 1076 (1976); *Bates* v. *Carroll,* 99 Conn. 677, 679, 122 A. 562 (1923). This analogy is inapplicable. Evidence to support a claim of future economic damage is sufficient if it allows the jury an opportunity to appraise the plaintiff's condition and the future consequences of that condition. *Boland* v. *Vanderbilt,* 140 Conn. 520, 524, 102 A.2d 362 (1953).

The plaintiff's medical expert and treating physician testified that the plaintiff had a 15 percent permanent disability of her back. He further testified that he had "no doubt" that the plaintiff will require medical care in the future. Examination of billing statements received into evidence without objection reveals that the plaintiff incurred medical expenses in the amount of $874.96 in 1989, almost two years after the injury occurred. The parties stipulated that the plaintiff's life expectancy was 54.9 years. The plaintiff testified that her injuries made driving difficult. The plaintiff's medical expert testified that he had recommended that the plaintiff use an orthopedic car seat costing $2372.33. The parties do not direct our attention to the expected useful life of the car seat, but we assume the jury assigned a reasonable period. We also recognize that the jury could have reasonably determined that the plaintiff would need to replace such a car seat from time to time. If the jury considered these two factors alone, it could have quite reasonably concluded that the plaintiff would incur expenses for both medical treatment and medical supplies, including an annual cost for the car seat. Considering the plaintiff's life expectancy of 54.9 years, and without regard to any loss of the plaintiff's earning capacity (on which there was some evidence), we cannot say that the resulting figure was not a reasonable estimate by the jury. Under the circum-

stances present in this case, the trial court did not abuse its discretion by refusing to grant the defendant's motion to set aside the verdict.

The defendant's next claim, that the trial court improperly submitted the issue of punitive damages to the jury, is raised in two parts. The first is that the trial court improperly submitted the issue of punitive damages to the jury because the pleadings did not claim such damages. The second is that the evidence of recklessness was insufficient as a matter of law to support an award of punitive damages.

"To furnish a basis for recovery of [punitive] damages, the pleadings must allege and the evidence must show wanton or wilful malicious misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought. . . . 'A wilful or malicious injury is one caused by design. Wilfulness and malice alike import intent. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances.' *Sharkey* v. *Skilton,* 83 Conn. 503, 507–508, 77 A. 950 (1910). . . . Wanton misconduct is reckless misconduct. *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 199, 139 A.2d 698 (1928). 'It is such conduct as indicates a reckless disregard of the rights or safety of others or of the consequences of the action.' *Bordonaro* v. *Senk,* 109 Conn. 428, 431, 147 A.2d 136 (1929)." (Citations omitted.) *Markey* v. *Santangelo,* 195 Conn. 76, 77–78, 485 A.2d 1305 (1985). Punitive damages need not be explicitly alleged in the body of the complaint or included in the claims for relief as long as the plaintiff's pleading gives the defendant sufficient notice that she is being charged with aggravated conduct rather than with mere negligence. *Markey* v. *Santangelo,* supra, 78.

The second count of the complaint alleged that the plaintiff's "injuries and losses were caused by the reckless indifference to the rights of others on the part of the defendant." This claim gave the defendant sufficient notice that she was being charged with "aggravated conduct," rather than with mere negligence, and accordingly satisfied the pleading requirement. Id.

As to the evidence presented, in determining whether the defendant's conduct evidenced a reckless indifference to the rights of others, a jury may properly consider evidence of voluntary intoxication while knowing of the necessity to drive as an "aggravating circumstance." *Infeld* v. *Sullivan*, 151 Conn. 506, 508, 199 A.2d 693 (1964); *Jack* v. *Scanlon*, 4 Conn. App. 451, 455–56, 495 A.2d 1084, cert. dismissed, 197 Conn. 808, 499 A.2d 59 (1985). A reckless disregard for the safety of others or for the consequences of one's acts may be inferred from the combined acts of voluntary intoxication and operating a motor vehicle. *Nast* v. *Lockett*, 312 Md. 343, 362–63, 539 A.2d 1113 (Md. 1988). "As the degree of impairment by the voluntary consumption of alcohol increases, the need for other aggravating circumstances lessens, and vice versa." Id., 362.

We do not intend to imply, nor do we formulate a rule, that holds that a driver who is guilty of negligence in the operation of a motor vehicle and who has been drinking alcoholic beverages is automatically exposed to the payment of punitive damages. The issue that must always be resolved by the trier of fact in these situations is whether the facts as adduced, including the consumption of alcohol, permit a rational inference that the driver evinced a reckless indifference to the rights of others in his operation of the motor vehicle.

James O'Brien, a physician and pharmacologist, testified for the plaintiff. He stated that the defendant had a blood alcohol level of .189 percent when he tested her

after the accident, indicating that she had consumed at least ten twelve ounce bottles of beer in the three hours before the accident. He testified that her blood alcohol level was two and one-half times greater than the level at which it would be safe to drive a car. He stated that her degree of intoxication was such that her judgment and concentration would be impaired, her reflexes and response time would be slower, she would not be as aware of danger and would be more likely to take risks while driving. Under these circumstances, we cannot say that the jury's award of punitive damages was not supported by sufficient evidence.

The defendant's next claim is that the trial court improperly refused to instruct the jury regarding the apportionment of negligence. At the close of evidence the defendant requested that the judge include in the special verdict form the following question. "If you find the defendant Lynne M. Carcia liable, what percentage of negligence do you attribute to the plaintiff or any other person in relation to the negligence of Lynne M. Carcia?" This request was made pursuant to General Statutes § 52-572h (d), which allows for the apportionment of damages among all persons whose negligent actions were a proximate cause of the damage.[1] The trial court ruled that there was insufficient evidence presented from which the jury could find negligence on the part of Anastasio or the plaintiff, and, therefore, refused to submit that question to the jury.

The defendant offers two pieces of evidence to support his claim that there was sufficient evidence presented for the jury to conclude that Anastasio was

[1] The defendant argues that this statute permits the apportionment of negligence to a nonparty to the lawsuit and thereby limits the recovery of the plaintiff against the defendant or defendants to their apportioned share. Because our disposition of this issue is based on the ruling of the trial court regarding the sufficiency of the evidence, we need not and do not address this claim.

negligent. The first is that Anastasio's testimony regarding the movement of the defendant's vehicle is claimed to be inconsistent with the plaintiff's testimony, thus indicating that Anastasio failed to keep an adequate lookout. The second is that bruises sustained by the plaintiff and caused by the seatbelt could indicate excessive speed on the part of Anastasio.

"The trial court has a duty not to submit any issue to the jury upon which the evidence would not support a finding. *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982)." *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.,* 5 Conn. App. 579, 584, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986). We agree with the trial court's conclusion that the alleged inconsistency presented by the defendant is not sufficient to support a finding that Anastasio operated his vehicle in a negligent manner.[2]

The defendant also asserts that the bruises caused by the plaintiff's seatbelt could have indicated to the jury that Anastasio was speeding. There was no evidence presented, however, regarding the relationship between the bruises and Anastasio's driving. Inference from facts cannot be the result of guess, conjecture or speculation. See *Toomey* v. *Danaher,* 161 Conn. 204, 211, 286 A.2d 293 (1971). Accordingly, the trial court properly withheld this issue from the jury.

[2] The defendant compares the following testimony in support of her position that the testimony supports an inference of negligence on the part of Anastasio:

"Q. Did you ever notice whether [the defendant] hesitated or stopped at the signal that was there?

"A. It appeared to me that she never stopped.

"Q. Did she hesitate?

"A. I couldn't tell. She was always moving, I knew that."

"[Plaintiff]: Then I remember seeing the defendant's car, it was white, and I don't remember if, clearly, if she stopped or if she just hesitated. I remember seeing her sit there for like a brief second."

The defendant's final claim is that the verdict was excessive. The assessment of damages is peculiarly within the province of the jury and its determination should be set aside only when the verdict is plainly excessive and exorbitant. *Szivos* v. *Leonard,* 113 Conn. 522, 525, 155 A. 637 (1932). The test to be applied is whether "the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption." *Slabinski* v. *Dix,* 138 Conn. 625, 629, 88 A.2d 115 (1952).

Under the circumstances of this case, the jury's award cannot be said to "shock the judicial conscience" in view of the plaintiff's life expectancy, the permanency of her functional impairment and the medical evidence that was before the jury, when viewed in the light most favorable to the plaintiff. See *Mather* v. *Griffin Hospital,* 207 Conn. 125, 139, 540 A.2d 666 (1988).

The judgment is affirmed.

In this opinion the other judges concurred.