DEANN K. SEYMOUR *v.* LYNNE M. CARCIA
(14287)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued December 11, 1991—decision released March 24, 1992

*Philip J. O'Connor,* with whom was *Steven Seligman,* for the appellant (defendant).

*Kathryn Calibey,* for the appellee (plaintiff).

GLASS, J. This is a tort action brought by the plaintiff, Deann Seymour, against the defendant, Lynne Carcia, for personal injuries suffered by the plaintiff as a result of the alleged negligent operation of an automobile by the defendant. After a trial, the jury returned a verdict in the amount of $176,081 in favor of the plaintiff. Thereafter, the defendant moved to set aside the verdict, claiming that it was excessive, contrary to law and against the evidence. The trial court denied the motion. On appeal, the Appellate Court affirmed the judgment of the trial court. We granted certification

limited to the issue of whether the Appellate Court was correct in determining that the plaintiff had introduced sufficient evidence to support the jury's award for future economic loss. *Seymour* v. *Carcia,* 24 Conn. App. 446, 589 A.2d 7, cert. granted, 219 Conn. 903, 593 A.2d 130 (1991). We conclude that there was sufficient evidence to support the award and, therefore, we affirm the judgment of the Appellate Court.

Although the facts are set forth fully in the opinion of the Appellate Court; *Seymour* v. *Carcia,* supra; we relate those facts necessary to a determination of the certified issue. The jury could reasonably have found the following facts. On March 6, 1987, at approximately 8:50 p.m., the defendant was driving west on route 44 in Avon. At approximately the same time, the plaintiff was travelling east on route 44 in a car being driven by Joseph Anastasio. As Anastasio entered the intersection of Waterville Road and route 44, the defendant made a left turn and crossed into the eastbound lane where she collided with the car driven by Anastasio. As a result of the collision, the plaintiff suffered injuries to the cervical, dorsal and lumbosacral regions of her spine. She received treatment for those injuries from the time of the accident until the time of trial more than two years later.

At the trial, the plaintiff testified that she continued to suffer discomfort in her lower back. The plaintiff further testified that she was unable to sit in a car for extended periods of time. She also testified that she had missed between six and seven days of work during the two years following the accident and, as a result, had lost earnings of approximately $500. She testified that she had suffered "flare-ups" for which she had sought medical treatment, and that only a week before the trial when she had last sought such treatment, she had experienced "great difficulty" walking.

Steven Shifreen, a physician, testified for the plaintiff as an expert witness. Shifreen had treated the plaintiff for the first time one week after the accident and had continued to treat her until shortly before the time of trial. Shifreen testified that as a result of the accident, the plaintiff had a fifteen percent permanent disability of her lower back. He testified further that based on the plaintiff's past medical history and the permanency of her injuries, she would "in all probability suffer some relapses," and that he had "no doubt" that she would require medical care in the future. Shifreen testified that when the plaintiff had come to see him approximately one week before the trial, she had "hobbled into the office, almost unable to walk." He described the various types of therapy that he had administered to the plaintiff during the course of her treatment.[1] Shifreen also testified that he had recommended that the plaintiff purchase an orthopedic car seat. Medical bills admitted into evidence indicated that the plaintiff had incurred $874.96 in medical expenses in 1989.[2] The evidence also established that the cost of the car seat recommended by Shifreen was $2372.33. The parties stipulated that the plaintiff's life expectancy was 54.9 years.

The jury awarded the plaintiff total damages of $176,081, including $68,372 for future economic

[1] Shifreen testified that he had treated the plaintiff with a course of physical and manual therapy applied to the injured areas, including infrared heat treatments, massage therapy, manual mobilization and ultrasound. Shifreen also testified that he had prescribed medication for the plaintiff, bills for which were admitted into evidence. Upon cross-examination, Shifreen testified that he usually charged $15 for heat treatment, $15 for massage therapy and $20 for mobilization therapy. He stated that the lowest charge to the plaintiff for any one visit had been $50.

[2] This figure was attributable to treatment administered to the plaintiff by Shifreen. The evidence presented at the trial established that since the time of the accident, the plaintiff had incurred a total medical bill of $6922.46 for services rendered by Shifreen.

loss.[3] The court denied the defendant's motion to set aside the verdict and judgment was rendered on the verdict accordingly. The defendant appealed to the Appellate Court, which affirmed the judgment of the trial court. We granted certification and now affirm the judgment of the Appellate Court.

The sole issue in this appeal is whether the Appellate Court was correct in determining that the plaintiff had introduced sufficient evidence to support the jury's award for future economic loss. The defendant claims that the evidence introduced by the plaintiff to prove future economic loss did not provide the jury with a sufficient basis to arrive at an award for such damages and, therefore, the Appellate Court incorrectly affirmed the judgment of the trial court. The plaintiff contends that the Appellate Court correctly determined that the evidence she had presented at trial regarding the nature and extent of her injuries, her past medical treatment and expenses, her projected life expectancy and the cost of a prescribed orthopedic car seat was sufficient to support the jury's award. We agree with the plaintiff and, therefore, we affirm the judgment of the Appellate Court.

"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . In considering a motion to set aside the ver-

---

[3] The remainder of the verdict was apportioned as follows: $8125 for past economic loss, $3750 for past noneconomic loss, $54,000 for future noneconomic loss, and $41,834 in fees and costs. Pursuant to the defendant's motion to open the judgment, the trial court later reduced the judgment by $3125 to conform with the collateral source provisions of No. 86-338 of the 1986 Public Acts.

dict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. . . . The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness." (Citations omitted.) *Mather* v. *Griffin Hospital,* 207 Conn. 125, 138–39, 540 A.2d 666 (1988).

Under General Statutes (Rev. to 1987) § 52-225d, "[f]uture economic damages" are defined as "compensation determined by the trier of fact for pecuniary losses not yet incurred by the claimant at the time the damages findings are made including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any past or future noneconomic damages." Thus, as long as the plaintiff met the requisite burden of proof for these elements of damages, she could recover the cost of reasonable and necessary future medical care and the projected loss of earnings resulting from her injury. "Damages for the future consequences of an injury can never be forecast with certainty. With respect to awards for permanent injuries, actuarial tables of average life expectancy are commonly used to assist the trier in measuring the loss a plaintiff is likely to sustain from the future effects of an injury." *Petriello* v. *Kalman,* 215 Conn. 377, 396–97, 576 A.2d 474 (1990); see also 47 Restatement (Second), Torts § 912, comment (e). In addition, "[t]he cost and frequency of past medical treatment . . . may be used as a 'yardstick for future expenses' if it can be inferred that the plaintiff will continue to seek the same form of treatment in the future." 2 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, Damages In Tort Actions § 9.55[4], p. 9-80. "It is not speculation or conjecture to calculate future medical expenses based upon the history of medical expenses

that have accrued as of the trial date, particularly when there is also a degree of medical certainty that future medical expenses will be necessary. . . . Future medical expenses do not require the same degree of certainty as past medical expenses. . . . Where the doctor testifies that the injured party might need future treatment and the injured party testifies he still suffers pain, that testimony is sufficient for consideration of the element of future medical expense." (Citations omitted.) *Willson Safety Products* v. *Eschenbrenner,* 302 Ark. 228, 233, 788 S.W.2d 729 (1990).

Viewing the record as a whole in light of the foregoing standards, we conclude that the plaintiff in this case presented sufficient evidence to support the jury's award for future economic loss. The jury could reasonably have found that more than two years after the accident had occurred, the plaintiff continued to experience discomfort in her lower back as a result of her injuries, and that she had suffered several relapses for which she had sought medical treatment. The evidence introduced at the trial further established that in 1989, the plaintiff had incurred medical expenses of $874.96. Shifreen, the plaintiff's medical expert, testified that the plaintiff's injuries were permanent, and that based on the plaintiff's past medical history, she would "in all probability suffer some relapses." He further testified that he had "no doubt that [the plaintiff would] require care in the future." The parties stipulated that the plaintiff's life expectancy was 54.9 years. Shifreen also testified that he had recommended that the plaintiff purchase an orthopedic car seat. Evidence submitted by the plaintiff established that the cost of this seat was $2372.33.[4]

---

[4] Although the evidence fails to show the useful life of an orthopedic car seat, we agree with the Appellate Court that the jury could have determined a reasonable useful life for that item and estimated the number of repurchases necessary during the stipulated 54.9 years remaining of the plaintiff's life. *Seymour* v. *Carcia,* 24 Conn. App. 446, 450, 589 A.2d 7 (1991).

The expert testimony that the plaintiff would require lifelong medical care in conjunction with the evidence regarding the type and cost of medical treatment received by the plaintiff since the accident raised a reasonable inference that she would continue to seek similar treatment in the future. See 2 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, supra. In addition, the plaintiff's testimony regarding the amount of earnings she had lost as a result of her injuries provided a reasonable basis for the jury to estimate future loss of earnings.[5] See *Delott* v. *Roraback,* 179 Conn. 406, 411, 426 A.2d 791 (1980) (evidence of loss of earning capacity need not be established with exactness as long as it affords the jury a basis for a reasonable estimate). Thus, in view of the expert medical testimony, the evidence of the plaintiff's past loss of earnings and the plaintiff's stipulated life expectancy, we cannot say that the jury's award for future economic damages was unreasonable.[6]

---

[5] The Appellate Court concluded that the jury's award for future economic loss was not unreasonable without regard to any loss of earning capacity. *Seymour* v. *Carcia,* 24 Conn. App. 446, 450, 589 A.2d 7 (1991). The Appellate Court noted, however, that there was some evidence of the plaintiff's loss of earning capacity. Id.

[6] In *Hartt* v. *Wiggin,* 379 A.2d 155, 156–57 (Me. 1977), the plaintiff sustained back injuries as a result of an automobile accident with the defendant. At trial the plaintiff introduced evidence regarding the permanency of his injuries, the past frequency of medical treatments and the cost of such treatments. He also introduced evidence of the cost of medications prescribed by his physician. The defendant requested a mistrial on the ground that the plaintiff's closing argument had improperly projected a mathematical computation of, inter alia, future medical care costs based on unproven facts and facts not in evidence. In upholding the trial court's refusal to grant a mistrial, the Supreme Judicial Court of Maine stated: "It was permissible for the jury to infer from [the] evidence that [the plaintiff's] back condition would persist as it had persisted for the preceding three and one-half years and that [the plaintiff] would reasonably continue to seek the same forms of relief and treatment in the future as he had in the past. Under those circumstances the cost and frequency of past medical treatment, the average monthly cost of medication, and [the plaintiff's] life expectancy were proper factors to be considered in assessing future

"Damages in a personal injury case are not to be awarded upon a fixed basis, table, standard, or precise mathematical formula." D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed.) § 171, p. 488, citing *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 675, 136 A.2d 918 (1957). Rather, "[i]n awarding future medical expenses, a jury's determination must be based upon an estimate of reasonable probabilities, not possibilities. *Jerz* v. *Humphrey,* 160 Conn. 219, 224, 276 A.2d 884 (1971). Such evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. See *Healy* v. *White,* 173 Conn. 438, 442, 378 A.2d 540 (1977); *Nash* v. *Hunt,* 166 Conn. 418, 428, 352 A.2d 773 (1974); *Hanauer* v. *Coscia,* 157 Conn. 49, 53, 244 A.2d 611 (1968)." *Reilly* v. *DiBianco,* 6 Conn. App. 556, 575, 507 A.2d 106, cert. denied, 200 Conn. 804, 510 A.2d 192 (1986).[7]

The defendant, as previously noted, contends that the plaintiff introduced insufficient evidence as to the nature, frequency and cost of future medical treatment,

medical costs." Id., 157. We can discern no reason why the same or similar factors should be insufficient to prove future economic damages in the present case.

[7] In *Petriello* v. *Kalman,* 215 Conn. 377, 397–98, 576 A.2d 474 (1990), this court held that "in a tort action, a plaintiff who has established a breach of duty that was a substantial factor in causing a present injury which has resulted in an increased risk of future harm is entitled to compensation to the extent that the future harm is likely to occur." This court overruled the following cases to the extent that they held otherwise: *Healy* v. *White,* 173 Conn. 438, 378 A.2d 540 (1977); *Davis* v. *P. Gambardella & Son Cheese Corporation,* 147 Conn. 365, 161 A.2d 583 (1960); *Sheiman* v. *Sheiman,* 143 Conn. 222, 121 A.2d 285 (1956); and *Johnson* v. *Connecticut Co.,* 85 Conn. 438, 83 A. 530 (1912). *Petriello* v. *Kalman,* supra, 398 n.11. The holding, however, did not affect these cases insofar as any of them held that damages for future economic loss could not be sustained when the jury lacked a reasonable basis to estimate such damages. See *Sheiman* v. *Sheiman,* supra, 225–26; cf. *Hulk* v. *Aishberg,* 126 Conn. 360, 363, 11 A.2d 380 (1940) (trial court was not required to charge jury on permanent disability or future loss of earnings when no evidence had been introduced as to the duration of plaintiff's disability).

and the economic implications of any future medical problems resulting from the accident, to support the jury's award of future economic loss. We disagree. Giving the evidence the most favorable construction in support of the jury's award to which it is reasonably entitled, we conclude that the award of $68,372 for future economic loss was not unreasonable. The Appellate Court, therefore, correctly concluded that the defendant was not entitled to have that portion of the damages award set aside. See *Healy* v. *White,* supra, 449. " 'The ultimate test is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. . . .' *Marin* v. *Silva,* 156 Conn. 321, 323, 240 A.2d 909 [1968]." *Jerz* v. *Humphrey,* supra. In the present case, the defendant has not claimed that any incident occurred during the trial to influence the jury improperly, nor are we able to say that the jury's award for future economic loss is so excessive as to compel such a conclusion.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.