WILLIAM A. MADSEN ET AL. *v.* MICHAEL G.
GATES ET AL.
(AC 23917)

Dranginis, Flynn and Bishop, Js.

384

Argued April 23—officially released October 5, 2004

*Brian W. Prucker,* for the appellants (plaintiffs).

*Frank J. Szilagyi,* with whom, on the brief, was *Josephine A. Spinella,* for the appellees (defendants).

*Opinion*

FLYNN, J. The plaintiffs, William A. Madsen and Jacqueline Madsen, appeal from the judgment rendered following the trial court's denial of their motion to set aside the jury's verdict. The jury returned its verdict after a trial was held on the negligence action brought by the plaintiffs against the defendants, Michael G. Gates and the town of Enfield (town).[1] The jury found the defendants liable to William Madsen, and awarded him both economic and noneconomic damages, but found that the defendants were not liable to Jacqueline

---

[1] At oral argument before this court, the issue was raised as to whether a final judgment had been rendered in this case because no collateral source hearing had been held. As this issue called into question the jurisdiction of this court to hear the appeal, we ordered the parties to submit supplemental briefs on the issue. We conclude that there was a final judgment in this case. The defendants waived their right to a collateral source hearing by failing to file a motion for a collateral source reduction within ten days after the verdict was accepted, as required by Practice Book § 16-35.

Madsen and returned a verdict in favor of the defendants. The plaintiffs claim on appeal that the court improperly (1) permitted the jury to consider the amount of payments made by collateral sources that were accepted by William Madsen's medical providers in making its determination of the fair, just and reasonable value of the medical services rendered to the plaintiff, (2) failed to set aside inconsistent jury verdicts on negligence arising out of the same incident, (3) found that the failure of the defendants to file a notice pursuant to General Statutes § 7-465 (a) was waivable, (4) ruled that the plaintiffs' counsel could not argue a specific amount of future economic damages with respect to William Madsen although evidence of such damages was before the jury and (5) abused its discretion with respect to certain evidentiary rulings. We affirm the judgment of the trial court.

The following facts reasonably could have been found by the jury and are relevant to our resolution of this appeal. The vehicle in which the plaintiffs were riding was rear-ended by the truck that Gates was operating when Gates' foot slipped off the brake while the vehicles were stopped at a red light. Gates admitted that his foot had slipped off the brake of the truck he was operating, which caused him to strike the plaintiffs' vehicle and push it into the vehicle in front of it. At the time of the accident, Gates, an employee of the town, was operating a truck owned by the town in the course of his employment.

Both plaintiffs refused medical attention at the scene of the accident, but claimed to have experienced pain later that evening. Jacqueline Madsen claimed to have injured her neck, and William Madsen claimed to have injured both of his knees and his left shoulder. The plaintiffs were treated by various physicians for their injuries. William Madsen's medical bills totaled approximately $53,500, of which approximately $11,200 had

been paid by Medicare and his insurance provider by the time of trial.

The plaintiffs brought an action against Gates sounding in negligence and against the town pursuant to General Statutes § 52-183 and in compliance with § 7-465. The case was tried before a jury, which returned a verdict in favor of William Madsen, finding the defendants liable for his injuries and awarding him economic damages in the amount of $11,315 and noneconomic damages in the amount of $1000. As to Jacqueline Madsen's claims, the jury returned a verdict in favor of the defendants. The plaintiffs timely filed a motion to set aside the verdict on December 11, 2002, arguing that the verdict was against the evidence, inadequate and contrary to law. The court denied the plaintiffs' motion on January 27, 2003. This appeal followed.

I

The plaintiffs first claim that the court improperly permitted the jury to consider the amount of payments made by third parties on behalf of William Madsen that were accepted by his medical providers, rather than the full amount that was billed, in making its determination of the fair, just and reasonable value of the medical services rendered to William Madsen.[2] The plaintiffs argue that the determination of the fair and reasonable value of medical services requires expert testimony regarding usual and customary fees, and not simply evidence of what amount the medical providers accepted as payment. We conclude that the plaintiffs have not preserved this issue for our review.

The plaintiffs contend that their counsel "objected to the ruling and the trial judge gave a directive from the bench that he would make collateral source deductions

[2] Because the jury found in favor of the defendants on Jacqueline Madsen's claims, this issue relates only to William Madsen.

after the jury had determined what was the fair and reasonable value of the medical services related to the accident." The record indicates that the plaintiffs' counsel objected when the defendants' counsel asked William Madsen whether he had paid his medical bills "out of his own pocket." The objection pertained to the specific issue of collateral sources. The court then gave a curative instruction regarding the collateral source rule in this state.[3] The defendants' counsel subsequently sought to admit into evidence William Madsen's interrogatory responses relating to his medical bills. The plaintiffs' counsel stated that he did not have an objection to the admission of the complete interrogatories. The court stated, "Well, these are interrogatories and [the defendants' counsel is] offering that portion in which [he] got answers as to what bills were paid." The court asked if there was an objection to this admission, to which the plaintiffs' counsel replied, "No objection to that, Your Honor." The exhibit contained information regarding third party payments.

Shortly thereafter, the court gave another instruction to the jury, stating: "[T]he numbers you heard, the mere numbers is what we are told was billed for services. The lower number is what [William Madsen] has said was paid, and there is no indication that there is a further bill coming. To the extent that any money was

---

[3] The court instructed the jury as follows: "Ladies and gentlemen, Connecticut has what is called [the] collateral source rule. Collateral source is if someone pays money other than the person who is injured. Under some circumstances those payments are subtracted from anything that you could collect in a case like this. But that subtraction is not made by the jury. It's made by the Judge. So after you determine what the fair [and] reasonable value of any services are related to the accident or if somebody has paid part of the bill, after your verdict, I would take any part off. We are not going to go into detail with you about who was paying what nor do we reveal if they have insurance or absence of it. Now, I am going to allow certain testimony about what the bills were but it's not [for] the purpose of you later saying, well, somebody else paid it and we will subtract that. That's for me to do if it's appropriate."

actually paid, I am going to take it off as I already told you. To the extent that there might be a difference between the bill and the payment that was extended, you're going to have to decide what the fair, just and reasonable value of services rendered in this case." The court then inquired whether either side wanted to object to that instruction. The plaintiffs' counsel stated, "Well, I think we, it opened up who paid for them and all that is collateral." The court responded, "Well, that is different. I am asking is there an objection limited to the instructions." The plaintiffs' counsel stated, "Just my same objection, Your Honor."

Although the plaintiffs' counsel generally objected to the revelation of the existence of collateral sources to the jury, which we agree was not proper, the court gave several curative instructions informing the jury that it was not entitled to make any deductions for payments made by third parties. The plaintiffs' counsel did not object, however, to the admission of the interrogatory responses as a full exhibit, which detailed the payments made on behalf of William Madsen by Medicare and also by his insurance agent, Allstate Insurance Company.

Regardless, the plaintiffs' claim in this appeal is not that the court improperly permitted payments from collateral sources to be revealed to the jury, but rather that it improperly instructed the jury that "the amount of payment tendered by a third party . . . is admissible not as to the value of the claim for economic loss by [William Madsen] in a negligence claim, but rather [is] admissible as to what is the fair, just and reasonable value of those services." The plaintiffs' counsel, however, voiced no objection to the instruction on those grounds at trial, although he had been given the opportunity. When the court asked the plaintiffs' counsel whether he objected to its instruction, he replied that he objected on the ground that it opened up the issue of payments from collateral sources in that it revealed

who paid for them. He did not object on the ground that the jury would be permitted to consider that lesser amounts were paid by third parties. In other words, he objected to who paid, rather than what was paid. He also did not object on that ground to the court's comprehensive jury charge, in which the court repeated its earlier instruction to the jury regarding the determination of the reasonable value of medical services. The plaintiffs also point to the defendants' closing argument, in which the defendants' counsel submitted his theory that the reasonable value of the medical services was what the medical provider had been paid. However, the plaintiffs did not object to this statement either.

"In order to preserve a claim related to the giving of or failure to give a jury instruction, a party is obligated either to submit a written request to charge covering the matter or to take an exception immediately after the charge is given." *Mauro* v. *Yale-New Haven Hospital*, 31 Conn. App. 584, 591, 627 A.2d 443 (1993). "If counsel follows the latter course, he or she must state distinctly the matter objected to and the ground of objection." (Internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 373, 788 A.2d 496 (2002). "Proper preservation of claims for appellate review requires that the trial court [be] effectively . . . alerted to a claim of potential error while there [is] still time for the court to act." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 31, 807 A.2d 955 (2002).

The plaintiffs were required to make a proper objection to the instructions at trial on the same ground that they now raise on appeal. The failure to do so renders this claim unpreserved, and, therefore, we decline to review it.[4]

---

[4] We decline to review the plaintiffs' claim for lack of preservation. However, our opinion should not be considered an imprimatur to use such an instruction in the future unless the evidence shows a windfall recovery would otherwise result because statutory or contractual provisions prevent

## II

The plaintiffs next claim that the court improperly denied their motion to set aside the jury's verdict because the verdict was inconsistent and the jury could not "reasonably and legally" have reached its conclusion. We disagree.

As a preliminary matter, we note the standard of review. "The court is vested with wide discretion in such matters, and we will not disturb the court's decision unless it has abused that discretion. . . . Generally, the court should not set aside a verdict where the jury reasonably could have found as it did from the evidence before it. The court's refusal to set aside a verdict is entitled to great weight, and every reasonable presumption should be indulged in favor of its correctness. . . . On appeal, the evidence in the record is to be considered in a light most favorable to the parties who prevailed at trial." (Citations omitted; internal quotation marks omitted.) *Mojica* v. *Benjamin*, 64 Conn. App. 359, 361–62, 780 A.2d 201 (2001).

The plaintiffs' principal argument in support of this claim is that, even if the jury found that Jacqueline Madsen had not suffered any damages as a result of the accident, the jury could not have found that the defendants were liable only to William Madsen because Gates had admitted he was at fault. The defendants

a medical provider from billing the patient for any uncovered excess, and no subrogation rights against the plaintiff could be exercised for the amount actually paid by the third party payer. The jury should not be permitted to consider the fact that bills are partially paid in determining the reasonable value of medical services. Permitting juries to hear evidence as to partial payment without more could be unfair. For example, evidence that an impoverished individual paid only $10 toward his $10,000 medical bill, without evidence that the medical provider had accepted the $10 as payment in full, would not support an inference that that was all the services were worth. Such an inference clearly would be improper as $10 could not fairly be deemed the reasonable value of those services simply because that was all the patient could afford to pay until that point.

contend that the verdicts were not inconsistent. We agree.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . If a plaintiff cannot prove all of those elements, the cause of action fails." (Citation omitted; internal quotation marks omitted.) *Roach* v. *Ivari International Centers, Inc.*, 77 Conn. App. 93, 99, 822 A.2d 316 (2003). As the defendants correctly note in their brief to this court, if the jury concluded that Jacqueline Madsen had not suffered damages, or Gates' negligence was not the proximate cause of her injuries, then her common-law negligence claim necessarily would fail. Jacqueline Madsen testified that she had been injured in an automobile accident less than a year prior to the accident at issue in this case. Whether the injuries she claimed to have sustained as a result of the accident in the present case were proximately caused by Gates' negligence was called into question.

The jury reasonably could have found that William Madsen had proven that some of his injuries were proximately caused by the defendants' negligence, but that Jacqueline Madsen did not prove that her injuries were so proximately caused. The court did not abuse its discretion by denying the plaintiffs' motion to set aside the verdict.[5]

---

[5] We also note that no special interrogatory was given to the jury. Rather, the verdict form that was provided to it combined the issues of breach of the duty of care constituting negligence and proximate cause, thereby subsuming the issue of proximate cause into the verdict for liability. The jury was instructed to fill out a defendants' verdict form if it found that the defendants were neither liable nor responsible for the plaintiffs' injuries. Conversely, the jury was instructed to fill out a plaintiffs' verdict form if it found that the defendants were both liable and responsible for the plaintiffs' injuries. None of the parties objected to the use of the verdict forms.

## III

The plaintiffs next claim that the court improperly denied their objection to the defendants' untimely notice of compliance with § 7-465 (a). They argue that the town denied liability, whereas Gates admitted liability, and, therefore, the untimeliness of the notice prevented them from filing a motion for a directed verdict. We disagree.

General Statutes § 7-465 (a) provides in relevant part that "[i]n any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time such attorney enters his appearance, files a statement with the court, which shall not become part of the pleadings or judgment file, that it will pay any verdict rendered in such action against such employee." In the present case, the town filed a § 7-465 (a) statement after both defendants had filed separate appearances. Even if we assume without deciding that the court improperly found that the § 7-465 (a) notice was waivable, the plaintiffs have failed to show how they were prejudiced by the defendants' untimely filing of that notice. The only cause of action that the plaintiffs were permitted to bring against the town was under § 7-465, which holds the town liable for indemnification for Gates' negligence. Except for indemnification actions, which are expressly authorized, the statute does not permit a separate cause of action to be brought against the town. Furthermore, Gates' admission that his negligence caused the collision could not be extended to constitute an admission by him that he had caused the injuries that the plaintiffs claimed arose from the collision. Therefore, the plaintiffs would not have been entitled to receive a directed verdict as to the town prior to a determination of Gates' liability for the claimed injuries and resulting damages.

"Where the claim of error on appeal is nonconstitutional, the burden is on the appellant to show that the

error was harmful." *State* v. *Beckenbach*, 198 Conn. 43, 49, 501 A.2d 752 (1985). The plaintiffs have not met this burden. We therefore reject this claim.

## IV

The plaintiffs next claim that the court improperly refused to allow their counsel to argue a specific amount of future economic damages in his closing arguments even though such evidence was before the jury. The plaintiffs also contend that the court improperly prevented their counsel from establishing a claim for worry or fear of future medical treatment for William Madsen.

## A

The plaintiffs argue that the amount of William Madsen's future damages was admitted into evidence and, therefore, the court improperly prevented the plaintiffs' counsel from discussing this amount in his rebuttal closing argument. We disagree.

As a preliminary matter, we note that "[i]n general, the scope of final argument lies within the sound discretion of the court . . . ." (Internal quotation marks omitted.) *State* v. *Rios*, 74 Conn. App. 110, 119, 810 A.2d 812 (2002), cert. denied, 262 Conn. 945, 815 A.2d 677 (2003). However, it is well established that "in closing argument before the jury, counsel may comment upon facts properly in evidence and upon reasonable inferences drawn therefrom." (Internal quotation marks omitted.) *Raybeck* v. *Danbury Orthopedic Associates, P.C.*, 72 Conn. App. 359, 369, 805 A.2d 130 (2002). Further, General Statutes § 52-216b (a) provides, in relevant part: "In any civil action to recover damages resulting from personal injury . . . counsel for any party to the action shall be entitled to specifically articulate to the trier of fact during closing arguments, in lump sums or by mathematical formulae, the amount of past and

*future* economic and noneconomic damages claimed to be recoverable." (Emphasis added.) "It is only when compliance with § 52-216b would require a trial court to disregard its constitutional obligation to guarantee a fair trial to the litigants that the statutory mandate may be deemed to be superseded by that higher law." *Bleau* v. *Ward*, 221 Conn. 331, 336-37, 603 A.2d 1147 (1992).

The following facts are relevant to our analysis. William Madsen's physician, Carmine Ciccarelli, submitted a letter to the plaintiffs' counsel, in which he stated: "In my estimation, [William Madsen] *may need* a conversion to a revision total knee replacement based on this loosening at some point in time with an overall expected cost of somewhere between $30,000 and $35,000 in terms of hospital and rehabilitation costs." (Emphasis added.) This letter was included in Dr. Ciccarelli's medical records, which was admitted into evidence as a full exhibit. The text of the letter also was read aloud to the jury. Dr. Ciccarelli did not testify at trial.

The plaintiffs argue that because this evidence had been admitted without objection and read to the jury, their counsel was entitled to argue a specific monetary amount of future damages in his closing argument. When the plaintiffs' counsel broached the plaintiffs' claim for future damages in his closing argument, the defendants' counsel objected on the ground that the plaintiffs' counsel was "misstating what the evidence was that was presented to the jury with regard to future [damages]." The court responded, "I will allow him [to argue] generally about future [damages]. There's been no specific numbers as to the future." The plaintiffs' counsel resumed his argument and mentioned not only that William Madsen may have to undergo future surgeries but also stated the cost of the surgeries as estimated by Dr. Ciccarelli. The defendants' counsel again made

an objection, which the court sustained, noting: "We specifically discussed [that] those numbers were not in the case, counsel. The objection is sustained and the jury should disregard that reference."

We recognize that "[i]n awarding future medical expenses, a jury's determination must be based upon an estimate of reasonable probabilities, not possibilities. . . . Such evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable." (Citation omitted; internal quotation marks omitted.) *Seymour* v. *Carcia*, 24 Conn. App. 446, 449, 589 A.2d 7 (1991), aff'd, 221 Conn. 473, 604 A.2d 1304 (1992), overruled in part on other grounds, *Marchetti* v. *Ramirez*, 240 Conn. 49, 688 A.2d 1325 (1997). Further, "where a claim is made for future damage, it is restricted to such as is shown to have been caused by the wrongful act and which, with reasonable probability, will result from it in the future." *Mourison* v. *Hansen*, 128 Conn. 62, 66, 20 A.2d 84 (1941).

Dr. Ciccarelli's letter established only that William Madsen *may* need to undergo knee surgery at some point in time. The standard for admission of future economic damages is that it must be shown to be reasonably probable that the plaintiff will require such treatment in the future as a result of the defendant's conduct. The only evidence presented by William Madsen regarding the need for any future medical treatment was the letter written by Dr. Ciccarelli, which stated only that William Madsen *may* need knee surgery in the future. We also note that the plaintiffs' complaint, which frames the claims to be proved at trial, alleged only that the plaintiffs "*may* continue to incur expenses for hospitalization, medical care and treatment . . . ." (Emphasis added.) The evidence presented was inadequate to establish that there was a reasonable probability, as contrasted with a reasonable possibility, that William Madsen would incur future economic damages.

Therefore, even if we were to determine that the court improperly precluded the plaintiffs' counsel from arguing specific monetary figures in his closing argument regarding future damages, we conclude that this was harmless because the jury could not reasonably have concluded that those damages should have been awarded.

## B

The plaintiffs also contend that the court improperly prevented their counsel from establishing a claim for worry or fear of future medical treatment for William Madsen. The plaintiffs cite *Petriello* v. *Kalman*, 215 Conn. 377, 389–90, 576 A.2d 474 (1990), in support of this claim. They argue that *Petriello* establishes that a claim for fear associated with future consequences of an injury is proper even when there is only a possibility, rather than a probability, that such consequences will develop. We need not decide this particular claim, however, because the plaintiffs attempted to show only Jacqueline Madsen's worry or fear about William Madsen's future medical treatments, and, further, because neither William Madsen nor Jacqueline Madsen alleged this claim in their complaint.

Our Supreme Court has held that "a plaintiff may recover for the fear of future medical treatment and disability, as distinguished from a recovery for the future disability itself, even if there is only a possibility that such future treatment or disability will take place." *Goodmaster* v. *Houser*, 225 Conn. 637, 645, 625 A.2d 1366 (1993). To recover for fear of future medical treatment, a plaintiff must first present evidence that he has experienced such a fear. William Madsen did not testify that he had experienced any worry or fear regarding possible future medical treatments. Although the plaintiffs argue that they attempted to lay a foundation for this claim through the testimony of Jacqueline Madsen,

her testimony pertained only to *her* worry or fear about her husband's future surgeries, which does not establish that William Madsen had similar fears.

It is also significant that the plaintiffs did not make an allegation of fear of future medical treatments in their complaint through a claim for emotional distress. In *Petriello*, our Supreme Court emphasized the fact that the plaintiff had made an emotional distress claim in her complaint. *Petriello* v. *Kalman*, supra, 215 Conn. 389. The *Petriello* court specifically noted that "evidence concerning an increased risk of injury, although insufficient to justify an award of damages based upon the occurrence of that injury in the future, may . . . be presented to the jury as evidence of emotional distress." Id. Because "[t]he failure to include a necessary allegation in a complaint precludes a recovery by the plaintiff under that complaint"; (internal quotation marks omitted) *Pergament* v. *Green*, 32 Conn. App. 644, 655, 630 A.2d 615, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993); we conclude that the plaintiffs were not entitled to recover damages for fear of future medical treatments. See *Sampiere* v. *Zaretsky*, 26 Conn. App. 490, 492–93, 602 A.2d 1037, cert. denied, 222 Conn. 902, 606 A.2d 1328 (1992) (plaintiff's failure to allege in complaint that future medical expenses were anticipated or that she continued to suffer continuing mental pain and anguish precluded recovery for such claims).

V

The plaintiffs finally claim that the court abused its discretion in making improper evidentiary rulings. Specifically, the plaintiffs argue that the court improperly (1) excluded evidence that the town had paid the plaintiffs' property damage bill and (2) admitted into evidence a videotape of William Madsen performing various activities.

The standard of review we apply to a trial court's evidentiary rulings is well settled. Such rulings "are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. . . . Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Citations omitted; internal quotation marks omitted.) *Daley* v. *McClintock*, 267 Conn. 399, 403, 838 A.2d 972 (2004).

A

The plaintiffs first evidentiary claim relates to the court's ruling that the town's payment of their property damage bill constituted hearsay and was, therefore, inadmissible. The plaintiffs argue that the town's payment of their bill constituted an implied admission of liability, which is an exception to the hearsay rule.

The plaintiffs cite only an evidentiary treatise in support of their argument. Specifically, the plaintiffs argue that "[t]he payment of property damage by the town of Enfield was an exception to the hearsay rule as an implied admission of liability. (Tait and LaPlante, Handbook of Connecticut Evidence, Second, § 11, 5, 4 (e) Consciousness of Liability)." The plaintiffs provide no case law or analysis to support their claim nor do they present any argument on the harmfulness or possible effect of this ruling. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inade-

quate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003); see also *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 43, 830 A.2d 240 (2003). On the basis of the plaintiffs' inadequate analysis of this issue, we deem this claim abandoned and decline to review it.

## B

The plaintiffs next claim that the court improperly admitted into evidence a short videotape of William Madsen performing various activities. The plaintiffs argue that the videotape was not a fair and accurate depiction of William Madsen's activities, and the court abused its discretion in admitting it because it was not properly authenticated. We disagree.

"A photograph offered to prove the appearance of . . . [something] which cannot itself be inspected by the jury must first be proved accurate. The accuracy sufficient for its admission is a preliminary question of fact to be determined by the trial judge. . . . Ordinarily . . . [a photograph] should be substantiated by testimony that it is a correct representation of the conditions it depicts, and in so far as it is properly so authenticated it becomes evidence of those conditions." (Citation omitted; internal quotation marks omitted.) *Tarquinio* v. *Diglio*, 175 Conn. 97, 98, 394 A.2d 198 (1978).

In the present case, the individual who videotaped William Madsen testified that it was a fair and accurate representation and that it had not been altered or edited in any way. The plaintiffs' counsel objected to the admission of the videotape on the ground that it was not a fair and accurate depiction of William Madsen's typical day and that the videotape had been edited selec-

tively. The court overruled the objection and found that it had been authenticated and was relevant to show William Madsen's ability to perform certain activities. On the basis of the record, we conclude that the court did not abuse its discretion in admitting the videotape into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.