# KATHLEEN DUFFY, ADMINISTRATRIX (ESTATE OF SAGE T. WARREN), ET AL. *v.* JULIE S. FLAGG ET AL.
## (AC 24460)

Bishop, West and Hennessy, Js.

Argued October 22, 2004—officially released April 19, 2005

*Antonio Ponvert III*, with whom, on the brief, were *James D. Horwitz, Ruth Weissman* and *Cynthia Bott,* for the appellants (plaintiffs).

*David J. Robertson*, for the appellees (named defendant et al.).

*Opinion*

BISHOP, J. In this medical malpractice action, the plaintiff Kathleen Duffy[1] appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendants Julie S. Flagg and Crescent Street Ob-Gyn.[2] On appeal, the plaintiff claims that she is entitled to a new trial because the court improperly granted the defendants' motion in limine to preclude evidence regarding Flagg's past experience with a procedure known as vaginal birth after cesarean section (VBAC), which precluded the plaintiff from introducing evidence that she was not given adequate informed consent.[3] We

---

[1] In her amended complaint, Duffy, individually and as administratrix of the estate of Sage T. Warren, brought claims of negligence sounding in medical malpractice in the performance of a vaginal birth after cesarean section medical procedure and lack of informed consent.

[2] Prior to trial, the plaintiff withdrew the action against the defendant Middlesex Hospital, leaving Flagg and Crescent Street Ob-Gyn as the defendants. We therefore refer in this opinion to Flagg and Crescent Street Ob-Gyn as the defendants.

[3] The plaintiff originally claimed in her brief to this court that the trial court also improperly (1) prohibited her from cross-examining the defendants' experts regarding the time in which they have performed emergency cesarean sections, (2) required her to produce an expert for a deposition

agree. Accordingly, we reverse the judgment of the trial court in part and order a new trial limited to the plaintiff's claim of lack of informed consent. We affirm the judgment in all other respects.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In the fall of 1997, the plaintiff became pregnant with her second child and sought obstetrical care from the defendants. During the course of treatment, Flagg informed the plaintiff that, although her first child had been delivered through a cesarean section, her second child could be delivered vaginally via the VBAC procedure. Flagg advised the plaintiff that, statistically, there were risks associated with the procedure, including uterine rupture and even a small chance of death of the child. Flagg reassured the plaintiff that all necessary steps would be taken to minimize or eliminate the risk to either the plaintiff or the plaintiff's decedent and that the risk was "very, very small . . . ." While discussing the risks of the VBAC procedure, the plaintiff asked Flagg about her personal experience with VBACs and whether Flagg had had any negative outcomes. In response, Flagg stated that one of her previous patients suffered a uterine rupture as a result of a VBAC delivery. She did not mention, however, that the uterine rupture had caused the infant's death and had placed the mother's health at risk.

On May 19, 1998, the plaintiff was admitted to Middlesex Hospital for labor. Under the care of Flagg, she

in Connecticut rather than by videoconference, (3) required witnesses more than thirty miles from the courthouse to appear in person instead of having their deposition testimony admitted into evidence and (4) instructed the jury that damages for negligent infliction of emotional distress could be awarded only for that portion of emotional distress that was above and beyond the emotional distress a reasonable person of ordinary sensibilities would suffer under the same circumstances. At oral argument before this court, however, the plaintiff withdrew those claims, and they are therefore not part of the appeal.

attempted to deliver the child vaginally, but her uterus ruptured. Flagg ultimately delivered Sage T. Warren, the plaintiff's decedent, by cesarean section. The plaintiff's decedent, who was in serious medical condition, survived on life support for eight days, but died on May 28, 1998. Subsequently, the plaintiff instituted this action in a complaint sounding in negligence, alleging lack of informed consent and medical malpractice in the performance of the VBAC procedure.

The defendants filed a motion in limine, which was granted on April 8, 2003, requesting the court to prohibit the plaintiff from introducing any evidence regarding Flagg's prior experience with VBAC deliveries. In response to the court's ruling, the plaintiff, on the record, orally withdrew the part of her claim that was based on lack of informed consent. When the plaintiff requested to preserve her right to challenge the evidentiary ruling on appeal, the court responded on the record that the plaintiff's informed consent claim had been preserved for appeal. After the conclusion of the evidence, the court instructed the jury regarding medical malpractice, omitting any charge on the issue of informed consent. After the jury returned a general verdict in favor of the defendants on April 28, 2003, the plaintiff filed a motion to set aside the verdict and for a new trial. The court denied the plaintiff's motion and rendered judgment in favor of the defendants. This appeal followed. Additional facts will be set forth as necessary.

The plaintiff claims that the court improperly precluded testimony regarding Flagg's prior experience with VBAC procedures as it related to the issue of informed consent. The plaintiff maintains further that this adverse evidentiary ruling unfairly precluded her from presenting her informed consent claim.[4] We agree.

---

[4] The plaintiff preserved the right to challenge on appeal the ruling on the motion in limine regarding the evidence on informed consent. We review cases as they are tried. A review of the record and the transcript makes

The following additional facts are pertinent to this issue. The defendants filed a motion in limine on April 3, 2003, requesting that the court prohibit the plaintiff from introducing any evidence (1) regarding the fact that Flagg had encountered a prior uterine rupture during an attempt to perform a VBAC delivery, (2) relating to the existence of a prior lawsuit against Flagg in connection with the death of a baby following a uterine rupture while attempting to perform a VBAC procedure and (3) regarding Flagg's prior patients. In the motion in limine, the defendants claimed that the evidence should be precluded on the grounds that it was not relevant, its prejudicial effect outweighed any probative value, it was evidence of prior bad acts and it had no bearing on the claims made in the matter. The plaintiff objected to the motion, arguing that the evidence was being offered substantively in support of her informed consent claim and on the issue of proximate cause, and not as impeachment evidence of prior bad acts. The

plain that the plaintiff did not waive her informed consent claim. Not only did the plaintiff file an objection to the defendants' motion in limine, but she argued her objection to the motion before the court. The plaintiff voluntarily withdrew the informed consent claim on the record on April 10, 2003, during a colloquy between the court and counsel:

"The Court: All right, so the record will reflect that the claim of informed consent has been withdrawn by counsel and will not be charged to the jury, nor will [it] be asked to make a decision on that basis.

"[The Plaintiff's Counsel]: And just so the record is clear, the reason that we're doing it is in view of the court's ruling, and I don't want to, by virtue of having withdrawn it, waive any rights as to the issue on appeal.

"The Court: I understand that. I assume that this is being done in anticipation that the court would not charge it to the jury in any event. So, your rights are preserved to appeal the court's ruling in the event of an adverse outcome, on this specific issue."

The plaintiff stated that the reason for withdrawing the informed consent claim was because the court had granted the defendants' motion in limine, which precluded any testimony or evidence regarding Flagg's prior experience with VBAC deliveries. Although the plaintiff orally withdrew that part of the claim regarding informed consent, she did so in direct response to the court's adverse evidentiary ruling. More importantly, the court explicitly stated that the issue was preserved for review on appeal. The issue, therefore, was preserved for appeal.

court granted the defendants' motion in limine on April 8, 2003, precluding the evidence for substantive and impeachment purposes.

The plaintiff's informed consent claim rested on the allegation that Flagg had given an incomplete and misleading response to the plaintiff's inquiry about prior experience with VBAC deliveries. The plaintiff maintained that Flagg told the plaintiff that, in a prior VBAC delivery, she had one complication that resulted in a uterine rupture, but failed to tell the plaintiff that the uterine rupture resulted in an infant's death.[5] The plaintiff asserted that this evidence supported her claim that Flagg had not provided her with adequate information required for informed consent because Flagg's incomplete response misled the plaintiff into believing that a uterine rupture was the only complication Flagg had encountered and that such a rupture was a condition that could be surgically repaired, unlike the death of a newborn. The plaintiff also claimed that if Flagg had informed her that the prior VBAC delivery resulted in the death of the infant, she would not have elected the VBAC procedure.

"The standard of review we apply to a trial court's evidentiary rulings is well settled. Such rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. . . . Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . .

---

[5] The defendants did not dispute the facts that the plaintiff inquired about Flagg's past experience with VBAC deliveries and that Flagg told her only that there was a uterine rupture, but not that there was a death as a result of that rupture.

Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) *Madsen* v. *Gates*, 85 Conn. App. 383, 399, 857 A.2d 412, cert. denied, 272 Conn. 902, 863 A.2d 695 (2004).

The plaintiff argues that, in granting the defendants' motion in limine, the court incorrectly assumed a gate-keeping function, prohibiting her from introducing evidence to the jury that the information Flagg had provided before surgery was inadequate for her to have given informed consent to the procedure. The plaintiff maintains that the jury should have been permitted to determine whether information regarding the statistical risks associated with the VBAC procedure alone provided an adequate basis for informed consent when the defendant physician additionally had provided an incomplete and misleading answer to a question regarding her specific experience with the procedure with prior patients.

In *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 465 A.2d 294 (1983), the seminal case regarding the doctrine of informed consent, the court adopted the "lay standard" as the criterion for informed consent. Id., 292–93. Under the lay standard, a physician has "a duty to disclose such information as a reasonable patient would consider material to the decision whether or not to undergo treatment or diagnosis." (Internal quotation marks omitted.) Id., 292. The court noted that "[t]he standard has been further delineated by specifying various elements which the physician's disclosure should include: (1) the nature of the procedure, (2) the risks and hazards of the procedure, (3) the alternatives to the procedure, and (4) the anticipated benefits of the procedure." (Internal quotation marks omitted.) Id.

In the present case, we are not called on to decide, generally, whether a physician has an affirmative duty

to disclose her prior experience with a particular procedure as part of the required underlayment for informed consent. Rather, we consider whether, in conjunction with an informed consent claim, a physician's failure to answer fully and completely a patient's direct question related to an anticipated procedure is probative of a claim that the physician did not obtain informed consent to the procedure. Whether a physician's conduct falls within the scope of the lay standard for informed consent is a question for the jury. *Pedersen* v. *Vahidy*, 209 Conn. 510, 521–22, 552 A.2d 419 (1989); see *Logan* v. *Greenwich Hospital Assn.*, supra, 191 Conn. 293. "Under the lay standard for determining whether there has been informed consent, the jurors as laypersons must be given *great latitude* to decide how much disclosure is sufficient." (Emphasis added.) *Pedersen* v. *Vahidy*, supra, 523. "In [*Logan*, our Supreme Court] held . . . that the trial court's instruction to the jury, that an alternative more hazardous than the surgical procedure performed was not a viable alternative and thus need not be disclosed to the patient, was erroneous, because it effectively limited a surgeon's duty in informing his patient of alternatives to advising him of only the least hazardous procedure, even though there was evidence that other procedures were viable." Id., 521–22. The *Logan* court held, therefore, that it was not the court's responsibility to decide that the plaintiff did not need to know about a riskier alternative. *Logan* v. *Greenwich Hospital Assn.*, supra, 292–95. Our Supreme Court, consequently, has interpreted the lay standard on informed consent broadly. See id.

In deciding whether to grant the defendants' motion in limine in the present case, the court concluded that "unless there [was] solid evidence that that particular experience created a statistically more significant risk to any particular patient who chose to treat with Dr. Flagg as opposed to some other physician, then a rea-

sonable patient doesn't have a need to know that information, and whether [the plaintiff] would have chosen another physician is irrelevant." In making its ruling, the court adopted the reasoning of the New Jersey Supreme Court in *Howard* v. *University of Medicine & Dentistry of New Jersey*, 172 N.J. 537, 557–58, 800 A.2d 73 (2002). In *Howard*, the lack of informed consent allegation was premised on a claim that a physician allegedly misrepresented his credentials and experience at the time he obtained the plaintiff's consent to surgery. Id. Echoing *Howard*, the court noted: "In that case, while the New Jersey Supreme Court could imagine a situation where a physician's prior experience that was not disclosed could be relevant on the issue of informed consent, it clearly held that the undisclosed risk from the physician's experience must increase the risk of the procedure performed. Also, that standard requires proof on which an objectively reasonable person would make a finding that physician experience could have a causal connection to a substantial risk of the procedure." Contrary to the court's analysis, we do not believe that a plaintiff must first demonstrate a nexus between a physician's prior experience with an anticipated procedure and the statistical risks of the procedure before evidence of a physician's misleading and incomplete answer to a question related to that procedure can be presented to a jury. Additionally, although we have found no appellate Connecticut case directly on point, we believe that the court's narrow construction of the doctrine of informed consent is at odds with our Supreme Court's determination in *Logan* that jurors should have the opportunity to determine the scope and amount of information required to support a claim based on a lack of informed consent. See *Logan* v. *Greenwich Hospital Assn.*, supra, 191 Conn. 293–94.

Here, the jury might reasonably have concluded that the lay standard for informed consent required Flagg

to answer the plaintiff's question regarding her prior experience with the VBAC procedure completely and accurately, thus informing the plaintiff not only that a prior patient's uterus had ruptured, but also that that patient's infant died as a direct result. Although we do not state that prior experience information need always be disclosed in order to obtain a patient's informed consent, we believe that when a patient directly asks for such information and when the requested information could be relevant to the choices made by a reasonable patient, a jury as fact finder, and not the court as gatekeeper, should be able to determine whether the failure to provide such information on request supports a plaintiff's claim regarding informed consent. We therefore conclude that it was the jury's responsibility to decide whether Flagg's failure to answer fully and frankly the plaintiff's direct question compromised Flagg's ability to obtain informed consent. Consequently, the court abused its discretion in precluding any evidence of or reference to Flagg's prior experience with the VBAC procedure.

Next, we determine whether the court's ruling was so harmful as to require a new trial. As noted, "the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) *Madsen* v. *Gates*, supra, 85 Conn. App. 399. In *Logan*, our Supreme Court concluded that the erroneous instruction was harmful and would have likely affected the result because it effectively removed from the jury the question of whether a particular alternative should have been discussed with the patient. *Logan* v. *Greenwich Hospital Assn.*, supra, 191 Conn. 295. In granting the defendants' motion in limine to preclude all evidence regarding Flagg's prior experience with VBAC deliveries, the court removed from the jury the question of whether the obligation to

obtain informed consent was satisfied when Flagg failed to answer fully and frankly a direct question about her prior experience with the VBAC procedure. Because the court's ruling effectively denied the plaintiff the opportunity to advance her claim of lack of informed consent, the ruling was harmful.

Additionally, we note that the viability of an informed consent claim does not depend on proof of malpractice relating to a particular medical procedure. See *Hammer* v. *Mount Sinai Hospital*, 25 Conn. App. 702, 706–707 n.4, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991). Consequently, our case law does not require a plaintiff to prove that the physician deviated from the standard of care in performing the particular medical procedure at issue in a claim based on lack of informed consent because the physician's negligence is the inadequate disclosure, and the damages claimed derive from the harm to the patient caused by a procedure that would not have occurred if the disclosure had been adequate.[6] See id.; see also *Gemme* v. *Goldberg*, 31 Conn. App. 527, 626 A.2d 318 (1993) (malpractice action based solely on lack of informed consent without claim physicians deviated from standard of care in performing medical procedure); *Mason* v. *Walsh*, 26 Conn. App. 225, 600 A.2d 326 (1991) (same), cert. denied, 221 Conn. 909, 602 A.2d 9 (1992). Thus, even though the plaintiff's claim of medical malpractice failed, she, nevertheless, may have prevailed on a separate claim of lack of informed

---

[6] For clarity, we note, too, that a patient who has undergone a procedure without *any* consent has a claim based, in essence, on civil assault and battery. *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 136–37, 757 A.2d 516 (2000). "In [*Logan* v. *Greenwich Hospital Assn.*, supra, 191 Conn. 289, our Supreme Court] established that a patient can recover for assault and battery when the physician (1) fails to obtain any consent to the particular treatment, (2) performs a different procedure from the one for which consent has been given, or (3) realizes that the patient does not understand what the procedure entails." *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, supra, 137.

consent. We conclude, therefore, that the court's improper evidentiary ruling was harmful.

The issues of lack of informed consent and medical malpractice in performing the VBAC procedure are separate rather than conjoint and, therefore, "[t]hat error infects only the theory of the complaint based upon the failure to obtain an informed consent." *Logan* v. *Greenwich Hospital Assn.*, supra, 191 Conn. 308. Because the plaintiff could have prevailed independently on the issue of lack of informed consent even if she failed on the issue of medical malpractice, she is entitled to a new trial limited to her claim premised on a lack of informed consent. "If several issues are presented by the pleadings and, on the trial of one or more of such issues, an error or ground for a new trial intervenes which does not affect the legality of the trial or disposition of the other issue or issues, judgment shall not be arrested or reversed, nor a new trial granted, except so far as relates to the particular issue or issues in the trial of which such error or ground for a new trial intervened." (Internal quotation marks omitted.) Id. Consequently, the plaintiff is entitled to a new trial on her claim that Flagg performed the VBAC without having obtained the plaintiff's informed consent.

The judgment as to informed consent only is reversed and the case is remanded for a new trial on that issue. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.