## KATHLEEN DUFFY, ADMINISTRATRIX (ESTATE OF SAGE T. WARREN), ET AL. *v.* JULIE S. FLAGG ET AL. (SC 17455)

Borden, Norcott, Palmer, Vertefeuille and Sullivan, Js.

Argued April 18—officially released August 29, 2006

*Charles W. Fleischmann*, with whom were *Madonna A. Sacco* and, on the brief, *Paul E. Pollock* and *David J. Robertson*, for the appellants (named defendant et al.).

*Antonio Ponvert III*, with whom was *James D. Horwitz*, for the appellees (plaintiffs).

*Opinion*

VERTEFEUILLE, J. The defendants Julie S. Flagg, a physician, and her medical practice, Crescent Street Ob-Gyn (Crescent Street),[1] appeal, following our grant of certification, from the judgment of the Appellate Court reversing the judgment of the trial court in favor of the defendants following a jury trial. *Duffy* v. *Flagg*, 88 Conn. App. 484, 869 A.2d 1270 (2005). The defendants claim that the Appellate Court improperly concluded that the trial court improperly excluded certain evidence relative to the issue of informed consent. We agree with the defendants, and accordingly, we reverse the judgment of the Appellate Court.

The record reveals the following factual and procedural history. In August, 1997, the plaintiff Kathleen Duffy[2] became pregnant with her second child and sought medical treatment from Flagg and Crescent Street. The plaintiff had received medical care from the

---

[1] Prior to trial, the plaintiff withdrew the action against another defendant, Middlesex Hospital. For purposes of this opinion, we refer to Flagg and Crescent Street as the defendants.

[2] The plaintiff Kathleen Duffy commenced this action individually and as administratrix of the estate of Sage T. Warren, her daughter. For purposes of this opinion, we refer to Duffy in both capacities as the plaintiff.

defendants approximately two years earlier when she was pregnant with her first child, who was delivered by cesarean section. During the course of her prenatal care for her second child, the plaintiff discussed with Flagg and other members of Crescent Street the possibility of having her second child born vaginally despite the fact that her first child had been delivered by cesarean section. During these discussions, the defendants informed the plaintiff of the risks of the procedure known as "vaginal birth after cesarean section," including the risk of uterine rupture and the possibility of a resulting risk of death to the plaintiff and her infant. On one occasion, while discussing the procedure with Flagg, the plaintiff asked Flagg whether she had encountered any difficulty in her prior vaginal birth after cesarean section deliveries.[3] Flagg responded that there had been "a bad outcome" because of a uterine rupture. The plaintiff did not inquire further about the result of the uterine rupture, and Flagg did not tell the plaintiff that the infant had died as a result of that uterine rupture. The plaintiff thereafter decided to attempt a vaginal birth after cesarean delivery and executed written consent forms therefor, which specifically detailed the nature, risks, alternatives and benefits of the procedure.[4]

On May 19, 1998, the plaintiff was admitted to Middlesex Hospital for the delivery of her second child. The plaintiff attempted to deliver the infant vaginally, but after she displayed possible signs of a uterine rupture,

[3] Flagg testified at trial that she had performed approximately 200 vaginal birth after cesarean section deliveries during her career.

[4] The consent form that the plaintiff signed included the following specific statements regarding the risk of harm to the plaintiff's infant: "I understand that [vaginal birth after cesarean section] is associated with a higher risk of harm to my baby than to me"; and "I understand that if my uterus ruptures during my [vaginal birth after cesarean section], there may not be sufficient time to operate and to prevent the death of or permanent brain injury to my baby."

Flagg transferred her to the operating room and delivered Sage T. Warren, the plaintiff's decedent, by cesarean section. As a result of complications during the birth, the infant survived on life support for eight days, but ultimately died on May 28, 1998. Thereafter, the plaintiff instituted this negligence action, alleging both medical malpractice and lack of informed consent.

Prior to trial, the defendants filed a motion in limine seeking to exclude all evidence related to the fact that Flagg previously had encountered a uterine rupture during an attempted vaginal birth after cesarean section delivery, including the existence of a lawsuit against Flagg for the death of the infant that resulted from that attempt, and all testimony from or reference to the former patient involved in that delivery. The trial court thereafter granted the defendants' motion in limine. The plaintiff then withdrew her claim with regard to informed consent.[5] After the completion of the evidence, the jury returned a verdict in favor of the defendants. The plaintiff then filed a motion to set aside the

---

[5] The Appellate Court concluded that the plaintiff had preserved her right to challenge the trial court's ruling on the motion in limine because she did not waive her informed consent claim, but only voluntarily withdrew it in response to the court's ruling on the motion in limine, which precluded her from offering evidence regarding that claim. See *Duffy* v. *Flagg*, supra, 88 Conn. App. 487–88 n.4. We agree with the Appellate Court that the plaintiff did not waive her informed consent claim, on the basis of the following colloquy:

"The Court: All right, so the record will reflect that the claim of informed consent has been withdrawn by counsel, and will not be charged to the jury, nor will they be asked to make a decision on that basis.

"[The Plaintiff's Counsel]: And just so the record is clear, the reason that we're doing it is in view of the court's ruling, and I don't want to, by virtue of having withdrawn it, waive any rights as to the issue on appeal.

"The Court: I understand that. I assume that this is being done in anticipation that the court would not charge it to the jury in any event. So your rights are preserved to appeal the court's ruling in the event of an adverse outcome, on this specific issue.

"[The Plaintiff's Counsel]: That's right. Thank you, Your Honor."

Accordingly, the issue properly was preserved for appeal.

verdict and for a new trial, which the court denied. Thereafter, the court rendered judgment in favor of the defendants in accordance with the verdict.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, claiming that the trial court improperly had granted the defendants' motion in limine to preclude evidence regarding Flagg's prior experience with vaginal birth after cesarean section, which the plaintiff claimed was relevant to informed consent.[6] The Appellate Court reversed the judgment of the trial court with regard to the informed consent claim, concluding that the evidence related to Flagg's prior experience with vaginal birth after cesarean section was admissible to determine whether Flagg had obtained the plaintiff's informed consent. *Duffy* v. *Flagg*, supra, 88 Conn. App. 493. Concluding that the trial court's error affected only the plaintiff's claim based on failure to obtain informed consent and did not warrant a new trial on the medical malpractice claim, the Appellate Court reversed the judgment of the trial court on the informed consent claim and remanded the case for a new trial solely on that claim. Id., 495. Thereafter, we granted the defendants' petition for certification to appeal from the Appellate Court, limited to the following issue: "Did the Appellate Court properly reverse the trial court's ruling excluding certain evidence regarding the issue of informed consent?" *Duffy* v. *Flagg*, 274 Conn. 909, 876 A.2d 1201 (2005).

On appeal, the defendants claim that the Appellate Court improperly reversed the trial court's ruling excluding evidence of Flagg's prior experience with vaginal birth after cesarean section. Specifically, the defendants assert that the Appellate Court failed to

---

[6] In her appeal to the Appellate Court, the plaintiff originally raised other grounds for appeal in her brief, but withdrew those claims at oral argument. Those claims therefore were not decided by the Appellate Court. See *Duffy* v. *Flagg*, supra, 88 Conn. App. 485–86 n.3.

apply *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 292, 465 A.2d 294 (1983), and subsequent decisions, in which this court recognized that "informed consent involves four specific factors: (1) the nature of the procedure; (2) the risks and hazards of the procedure; (3) the alternatives to the procedure; and (4) the anticipated benefits of the procedure." *Alswanger* v. *Smego*, 257 Conn. 58, 67–68, 776 A.2d 444 (2001), citing *Logan* v. *Greenwich Hospital Assn.*, supra, 292. Instead, the defendants argue, the Appellate Court added an additional element to informed consent, namely, an obligation on the part of a physician to disclose details of his or her professional experience even if this experience did not increase the risk to the patient.

In response, the plaintiff contends that the Appellate Court properly reversed the trial court's ruling excluding evidence regarding Flagg's prior experience with vaginal birth after cesarean section. The plaintiff contends that information regarding Flagg's prior experience is relevant to informed consent because the plaintiff specifically asked Flagg about her experience with vaginal birth after cesarean section deliveries, Flagg withheld the fact that an infant previously had died during such a delivery and the plaintiff would not have attempted a vaginal birth had she known that Flagg previously had experienced an infant death during such a delivery. We agree with the defendants, and, accordingly, we reverse the judgment of the Appellate Court.

We begin with the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court." (Internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000). Although ordinarily we review evidentiary claims pursuant to an abuse of discretion standard, the trial court's ruling on the motion in limine in the

present case was based on its legal determination that Flagg's prior experience was not properly part of an informed consent claim. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Rocky Mountain, LLC*, 277 Conn. 696, 728, 894 A.2d 259 (2006). We must decide, therefore, whether the trial court was legally and logically correct when it decided, under the facts of the case, to exclude evidence regarding Flagg's prior experience with the procedure of vaginal birth after cesarean section.

The following additional facts and procedural history are necessary to our resolution of this question. The defendants' motion in limine sought to preclude the plaintiff from introducing the following evidence: that a patient of Flagg's had experienced a uterine rupture during a prior vaginal birth after cesarean section delivery; the existence of a lawsuit against Flagg arising from the death of the infant that resulted from the uterine rupture; and any testimony from or reference to the former patient involved in that delivery. The basis for the motion was that the evidence regarding Flagg's prior experience with vaginal birth after cesarean section was not relevant to the plaintiff's medical malpractice action and that its prejudicial effect outweighed any probative value. In response, the plaintiff argued that the evidence was relevant to the plaintiff's informed consent claim because the plaintiff and Flagg had discussed Flagg's prior experience with vaginal birth after cesarean section and Flagg's experience played a key role in the plaintiff's decision to attempt a vaginal birth for the birth of her second child. Accordingly, the plaintiff argued that Flagg's prior experience and her candor

in relating that experience to the plaintiff was relevant and admissible.

During oral arguments on the motion in limine, the trial court asked the plaintiff's counsel for a proffer of the evidence that it planned to introduce. In response, the plaintiff's counsel indicated that he wanted to introduce evidence that, during a conversation between Flagg and the plaintiff regarding the risks of vaginal birth after cesarean section, the plaintiff had asked Flagg whether she had encountered any difficulty in her prior vaginal birth after cesarean section deliveries and Flagg stated that there had been a uterine rupture in one case, but did not say that the rupture had resulted in the death of the infant. The plaintiff's counsel further related that the plaintiff would testify that if she had been provided with information concerning the fact that Flagg had experienced a death of an infant during a vaginal birth after cesarean section delivery, rather than simply a uterine rupture, she would not have opted for that type of delivery. The plaintiff's counsel further proffered that the plaintiff would testify that, during this discussion with Flagg, she did not inquire further as to the consequences of the uterine rupture. The plaintiff's counsel also proffered that the plaintiff would testify that the risks of the vaginal birth after cesarean section were explained to her, including the risk of uterine rupture, and that she understood that one of the consequences of uterine rupture could be the death of the infant. The plaintiff would also testify that she discussed the consent forms with Flagg and other members of Crescent Street. In response to the trial court's inquiry, the plaintiff's counsel also acknowledged that there would be no evidence that Flagg's prior experience with vaginal birth after cesarean section increased the risk of harm to the plaintiff from such a procedure. After hearing the plaintiff's proffer and after argument from all parties, the trial court granted the motion in

limine and excluded evidence related to Flagg's prior experience with vaginal birth after cesarean section on the basis that Flagg's personal experience in performing the procedure was not relevant to an informed consent claim because it did not increase the risk of harm to the plaintiff.

In reversing the judgment of the trial court, the Appellate Court found it critical that Flagg's alleged failure to provide information to the plaintiff was in response to a direct question from the plaintiff. The Appellate Court concluded that when a patient directly asks for information regarding a physician's prior experience and the physician fails to provide that information, the jury should be able to determine whether such failure supports a claim for lack of informed consent. See *Duffy* v. *Flagg*, supra, 88 Conn. App. 493. We disagree.

We begin our analysis with a brief review of the law of informed consent. "The informed consent doctrine derives from the principle that [e]very human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent, commits an assault, for which he is liable in damages." (Internal quotation marks omitted.) *Sherwood* v. *Danbury Hospital*, 278 Conn. 163, 180, 896 A.2d 777 (2006). "Traditionally, a physician's duty to disclose information was measured by a 'professional' standard which was set by the medical profession in terms of customary medical practice in the community. . . . [However, in] *Logan* v. *Greenwich Hospital Assn.*, supra, [191 Conn.] 292–93, we adopted a 'lay' standard and stated that under the doctrine of informed consent, a physician is obligated 'to provide the patient with that information which a reasonable patient would have found material for making a decision whether to embark upon a contemplated course of therapy.' " (Citation

omitted.) *Lambert* v. *Stovell*, 205 Conn. 1, 5 n.3, 529 A.2d 710 (1987).

Our standard of disclosure for informed consent in this state is an *objective* standard that does not vary from patient to patient based on what the patient asks or what the patient would do with the information if it were disclosed. As this court stated in *Logan*, the lay standard of informed consent requires a physician "to provide the patient with that information which a *reasonable* patient would have found material for making a decision whether to embark upon a contemplated course of therapy." (Emphasis added.) *Logan* v. *Greenwich Hospital Assn.*, supra, 191 Conn. 292–93. In adopting the objective lay standard, this court recognized that "rather than impose on the physician an obligation to disclose at his peril whatever the *particular patient* might deem material to his choice, most courts have attempted to frame a less subjective measure of the physician's duty." (Emphasis added.) Id., 292, citing *Canterbury* v. *Spence*, 464 F.2d 772, 787 (D.C. Cir.), cert. denied, 409 U.S. 1064, 93 S. Ct. 560, 34 L. Ed. 2d 518 (1972).

We repeatedly have set forth the four elements that must be addressed in the physician's disclosure to the patient in order to obtain valid informed consent. "[I]nformed consent involves four specific factors: (1) the nature of the procedure; (2) the risks and hazards of the procedure; (3) the alternatives to the procedure; and (4) the anticipated benefits of the procedure." (Internal quotation marks omitted.) *Janusauskas* v. *Fichman*, 264 Conn. 796, 810 n.12, 826 A.2d 1066 (2003), quoting *Alswanger* v. *Smego*, supra, 257 Conn. 67–68; *Logan* v. *Greenwich Hospital Assn.*, supra, 191 Conn. 292. "We have noted that the cases on informed consent require something less than a full disclosure of all information which may have some bearing, however remote, upon the patient's decision." (Internal quotation marks

omitted.) *Pedersen* v. *Vahidy*, 209 Conn. 510, 522, 552 A.2d 419 (1989). Indeed, "the doctrine of informed consent is a limited one." *Duttry* v. *Patterson*, 565 Pa. 130, 136, 771 A.2d 1255 (2001).

The plaintiff's contention, that Flagg's prior experience with vaginal birth after cesarean section became relevant to informed consent because the plaintiff asked about Flagg's experience, is at variance with two fundamental principles of our informed consent jurisprudence in this state. First, the claim runs afoul of our adoption and consistent application of an *objective* standard of disclosure. We do not require a physician to disclose information that a particular patient might deem material to his or her decision, but, rather, limit the information to be disclosed to that which a reasonable patient would find material. Second, the information that the plaintiff sought to admit into evidence did not relate to any of the four specific factors encompassed by informed consent as we have defined it. Before granting the defendants' motion in limine, the trial court in the present case carefully ascertained that the plaintiff did not claim, and was not offering any evidence that, Flagg's prior experience with vaginal birth after cesarean section increased the risks or hazards of that procedure for the plaintiff. The evidence therefore had no relevance to any of the four established elements of informed consent in this state. We therefore conclude that the Appellate Court improperly reversed the judgment of the trial court.

Our conclusion and reasoning are supported by the decisions of courts in several other states. The Supreme Court of Pennsylvania addressed this same issue in *Duttry* v. *Patterson*, supra, 565 Pa. 130. In *Duttry*, the plaintiff brought an action against her physician alleging medical malpractice and lack of informed consent. Id., 133. At trial, the plaintiff sought to introduce evidence demonstrating that the physician had misrepresented

his experience with a certain medical procedure when he responded to the plaintiff's inquiry during a presurgery consultation. Id. The Pennsylvania Supreme Court upheld the trial court's ruling that the evidence concerning the physician's prior experience performing the procedure was inadmissible because "information personal to the physician, whether solicited by the patient or not, is irrelevant to the doctrine of informed consent." Id., 137. The court acknowledged that the doctrine of informed consent "clearly focuses on imparting information relative only to the surgery itself"; id., 136; and reaffirmed that "[t]his is an objective, rather than subjective analysis; its calculus does not shift depending on how inquisitive or passive the particular patient is." Id., 136–37. Indeed, the court cautioned that making evidence related to the physician's personal experience relevant whenever a particular patient requests such information is "highly problematic" and "divorced from the fundamental principle of the informed consent doctrine that information is material to the procedure at hand, and therefore must be divulged in order to obtain the patient's informed consent, if a reasonable person would wish to know it." Id., 136; see also *Wlosinski* v. *Cohn*, 269 Mich. App. 303, 308, 713 N.W.2d 16 (2005) ("physician has no duty to disclose to a patient the physician's success rates for a particular medical procedure, and [the physician's] failure to advise the decedent of his success rates could not, as a matter of law, taint the patient's consent"); *Whiteside* v. *Lukson*, 89 Wash. App. 109, 112, 947 P.2d 1263 (1997) (holding that physician does not have duty to disclose to patient information about physician's experience in performing proposed procedure in order to obtain patient's informed consent).[7] We agree with the reasoning of

---

[7] The trial court distinguished the present case from two cases in which courts in other states have concluded that evidence regarding the physician's prior experience is relevant to an informed consent claim if it increased the risks or hazards of the procedure for the plaintiff. First, in *Howard* v. *University of Medicine & Dentistry of New Jersey*, 172 N.J. 537, 800 A.2d

these courts, and reaffirm the objective standard of informed consent that is well established in our case law.

The present case is also distinguishable from the Appellate Court's decision in *DeGennaro* v. *Tandon*, 89 Conn. App. 183, 873 A.2d 191 (2005). In *DeGennaro*, the Appellate Court concluded that there was sufficient evidence for the jury to determine that there was a lack of informed consent when the defendant dentist failed to disclose certain provider specific information to the plaintiff. Id., 197. Specifically, the defendant failed to inform the plaintiff of her inexperience with certain equipment that was used in the procedure to be performed on the plaintiff, that the defendant usually had an assistant present during this type of procedure, but would not have one present during the plaintiff's procedure, and that the defendant's office was not officially open for business at the time the procedure was performed. See id., 185–87. In ruling as it did, the Appellate Court concluded that such information should not be excluded from the dentist's duty to inform "simply because that information was provider specific as opposed to procedure specific." Id., 191. The evidence in *DeGennaro*, however, is distinctly different from the evidence at issue in the present case. In *DeGennaro*, the provider specific information was related to the "the risks posed by the circumstances under which the

73 (2002), the Supreme Court of New Jersey, although recognizing that "[c]ourts generally have held that claims of lack of informed consent based on a failure to disclose professional-background information are without merit"; id., 555; held that a physician's prior experience may be relevant *if it increased the risk to the patient from the procedure.* Id., 555–57. Second, in *Johnson* v. *Kokemoor*, 199 Wis. 2d 615, 640–41, 545 N.W.2d 495 (1996), the Wisconsin Supreme Court concluded that evidence regarding a physician's limited prior experience with a particular procedure was admissible for purposes of an informed consent claim *when the plaintiff also introduced statistical evidence demonstrating that the physician's limited experience with this procedure increased the risk to the plaintiff.* We agree that these cases are distinguishable from the present case.

defendant performed the procedure" and was therefore relevant to one of the four established elements of informed consent in this state. Id., 189. Conversely, in the present case, there was absolutely no evidence that Flagg's prior experience with vaginal birth after cesarean section had any bearing on the risks to the plaintiff from the procedure or that it was otherwise relevant to any of the four established elements of informed consent. Accordingly, the Appellate Court's conclusion in *DeGennaro* does not conflict with our conclusion in the present case.

The plaintiff asserts that in *Janusauskas* v. *Fichman,* supra, 264 Conn. 811, we previously determined that a physician's experience in performing a particular procedure is relevant to a claim of lack of informed consent. The plaintiff's reliance on *Janusauskas,* however, is misplaced. First, the evidence involved in *Janusauskas* is distinguishable from the evidence at issue here. The evidence at issue in *Janusauskas* consisted of comments by the plaintiff's physician that he had had success with the proposed procedure on patients with a medical condition similar to the plaintiff's and his specific predictions as to the ultimate improvement that the procedure could have on the plaintiff's eyesight. Id. Therefore, the physician's comments were not strictly about the physician's prior experience performing the procedure, but were predictions as to the success of the plaintiff's surgery based on the physician's prior experience. These representations related to the plaintiff's surgery itself and essentially were information about the risks and benefits of the procedure, not information about the physician's prior experience with the procedure; it is undisputed that information related to the risks and benefits of a procedure is relevant to a claim of informed consent. See *Logan* v. *Greenwich Hospital Assn.,* supra, 191 Conn. 292; see also *Duttry* v. *Patterson,* supra, 565 Pa. 136. Second, even if the

evidence could be construed as prior experience evidence, we examined it in reference to the plaintiff's claim under the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Therefore, we did not reach any conclusion as to whether a physician's experience in performing a particular procedure is relevant to a claim of lack of informed consent. To the contrary, we reaffirmed that "[i]nformed consent involves four specific factors . . . ." *Janusauskas* v. *Fichman,* supra, 810 n.12.

The plaintiff further claims that if evidence regarding a physician's prior experience and/or his or her candor in revealing that experience is not relevant to an informed consent claim, then a physician will have no obligation to answer truthfully specific questions about his or her skills, qualifications, or experience. We disagree. Nothing in our ruling today suggests that a physician who misleads or misinforms his or her patient about the physician's skills, qualifications, or experience may not be liable in damages for misrepresentation. Our conclusion today is simply that we decline to expand the doctrine of informed consent to encompass answers to questions from a patient that are not relevant to the well established four factors that must be addressed in a physician's disclosure.

When this court rules on the parameters of informed consent, we prescribe what each and every physician in this state must disclose to each of his or her patients. We therefore strive to establish a rule of general applicability based on the reasonable patient standard. Although physicians should answer each patient's questions accurately and candidly, we must be mindful not to expand unduly the contours of the informed consent doctrine such that physicians would lack a clear understanding of the scope of the disclosure that they must make, and patients thereby would be burdened with immaterial information that many might find confusing.

Our adherence to the four factors of informed consent enunciated in *Logan* avoids these undesirable results.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's judgment.

In this opinion the other justices concurred.