WATERMAN, Justice (concurring in part and dissenting in part).
I respectfully dissent from parts IV and VI of the majority opinion. I would affirm the district court's summary judgment dismissing the informed-consent claim based on Dr. Khanna's failure to disclose his lack of experience with the Bentall heart procedure. Informed consent is not an open-ended, unlimited theory of liability. Rather, if a physician fails to disclose a known material risk and the risk occurs , the patient can recover for the harm resulting from the risk. But if the physician fails to disclose a risk that never materializes, the patient cannot recover for this nonevent. For example, failure to disclose the possible need for a blood transfusion before a hip replacement surgery does not result in liability if the patient did not need a transfusion.
Alan Andersen's theory is that he should have been told about Dr. Khanna's lack of experience because an inexperienced physician is more likely to make mistakes. That risk never materialized. The jury verdict establishes that Dr. Khanna met the standard of care for this surgery. Thus, even if the number of prior surgeries was something that needed to be disclosed as part of the informed-consent process, the jury verdict precludes recovery on the informed-consent theory. In any event, as most courts recognize, physicians owe no duty under informed-consent statutes to disclose their experiences with particular procedures.
I. The Jury Verdict of No Negligence Precludes Recovery for Nondisclosure of Dr. Khanna's Inexperience.
Andersen's informed-consent claim fails even if we assume Dr. Khanna was required to disclose his inexperience with the Bentall procedure. It is well-settled that the plaintiff in a medical malpractice informed -consent *550 case cannot recover unless the risk that the physician failed to disclose in fact materialized and caused harm to the patient. The seminal case is Canterbury v. Spence , which adopted this commonsense holding:
No more than breach of any other legal duty does nonfulfillment of the physician's obligation to disclose alone establish liability to the patient. An unrevealed risk that should have been made known must materialize, for otherwise the omission, however unpardonable, is legally without consequence. Occurrence of the risk must be harmful to the patient, for negligence unrelated to injury is nonactionable. And, as in malpractice actions generally, there must be a causal relationship between the physician's failure to adequately divulge and damage to the patient.
464 F.2d 772, 790 (D.C. Cir. 1972) (footnotes omitted).
The majority today acknowledges that Canterbury is a "landmark informed-consent case" and quotes the requirement that the unrevealed risk must materialize and harm the patient. Yet the majority fails to apply this rule and, instead, conflates it with a separate rule that the patient need not prove the physician negligently performed the surgery to recover under an informed-consent theory. A surgeon who competently performs a procedure may still be liable to the patient under an informed-consent theory, but only if a known risk the surgeon failed to disclose in fact occurs and harms the patient.
State supreme courts began adopting the requirement that the undisclosed risk materialize decades ago.
[A breach of] the physician's obligation to disclose the material risks incidental to a particular treatment ... does not per se establish liability to the patient. As in the case of any breach of a legal duty, the plaintiff must ... prove a proximate causal relationship between the physician's failure to adequately inform and injury to the patient.
Proof of proximate cause in such cases requires, initially, a showing that the unrevealed risk which should have been made known has materialized. Absent occurrence of the undisclosed risk, the doctor's omission is legally inconsequential.
Downer v. Veilleux, 322 A.2d 82, 92 (Me. 1974).
"The view espoused by the courts in Canterbury and Downer has been uniformly accepted by the high courts of numerous other jurisdictions." Cochran v. Wyeth, Inc. , 3 A.3d 673, 680 (Pa. Super. Ct. 2010) (collecting cases). Indeed, "[i]n informed consent cases, it appears to be well-settled and without debate that the non-disclosed risk must manifest itself into actual injury in order for a plaintiff to establish proximate causation." Id. ; see also Wachter v. United States , 689 F.Supp. 1420, 1422 (D. Md. 1988) (applying Maryland law, which requires plaintiff to show that the undisclosed risk materialized and caused injuries); Hales v. Pittman , 118 Ariz. 305, 576 P.2d 493, 499 (1978) (en banc) ("The failure of a physician to disclose a known risk does not, standing alone, constitute sufficient grounds for a malpractice action.... Because the anesthesia dolorosa did not occur in [the patient, the physician's] failure to disclose its possibility is not actionable under a malpractice theory."); Davis v. Kraff , 405 Ill.App.3d 20, 344 Ill.Dec. 600, 937 N.E.2d 306, 316-17 (2010) (rejecting plaintiff's argument "that she was not required to show that the undisclosed risk ever materialized"); LaCaze v. Collier, 434 So.2d 1039, 1048 (La. 1983) ("[T]he plaintiff [must] show that the undisclosed risk actually occurred.");
*551 Aceto v. Dougherty , 415 Mass. 654, 615 N.E.2d 188, 192 (1993) ("[I]n order to recover for a physician's failure to obtain informed consent, the plaintiff must show not only that the physician failed to disclose material information to the patient, but also that the physician's failure in this regard is causally related to the patient's injury."); Reinhardt v. Colton , 337 N.W.2d 88, 95-96 (Minn. 1983) (en banc) (requiring plaintiff to show that the undisclosed risk materialized in harm); Smith v. Cotter , 107 Nev. 267, 810 P.2d 1204, 1209 (1991) (per curiam) ("To establish proximate cause, first there must be a showing that the unrevealed risk which should have been revealed by the doctor actually materialized."); Howard v. Univ. of Med. & Dentistry of N.J. , 172 N.J. 537, 800 A.2d 73, 79-80 (2002) (requiring proof the "undisclosed risk occurred and harmed the plaintiff" (emphasis omitted) (quoting Teilhaber v. Greene , 320 N.J.Super. 453, 727 A.2d 518, 524 (1999) )); White v. Leimbach , 131 Ohio St.3d 21, 959 N.E.2d 1033, 1035 (2011) ("[A] patient bears the burden to present expert medical testimony ... showing that one or more of those undisclosed risks and dangers materialized and proximately caused injury."); Scott v. Bradford , 606 P.2d 554, 559 (Okla. 1979) ("The risk must actually materialize and plaintiff must have been injured as a result of submitting to the treatment. Absent occurrence of the undisclosed risk, a physician's failure to reveal its possibility is not actionable."); Hook v. Rothstein , 281 S.C. 541, 316 S.E.2d 690, 704 (1984) ("It is for the plaintiff to show that the undisclosed risk materialized and caused him or her injury....").
We expressly recognized the requirement that "the risk materialize[ ]" to recover under an informed-consent theory in Plowman v. Fort Madison Community Hospital , 896 N.W.2d 393, 403-04 (Iowa 2017) (quoting Canesi ex rel. Canesi v. Wilson , 158 N.J. 490, 730 A.2d 805, 813 (1999) ).[6] We compared informed-consent and wrongful-birth actions. Id. at 403. We allowed the parents' wrongful-birth action to proceed against medical defendants who failed to disclose the risk revealed on a fetal ultrasound that the child would be born with severe impairments. Id. at 395-96, 410. The Plowmans would have had no right of recovery for that nondisclosure if the child had been born healthy-that is, if the undisclosed risk of birth defects never materialized. See id. at 399 (reiterating that no recovery is allowed for birth of healthy child).
An illustrative case for this governing rule is K.A.C. v. Benson , in which the Minnesota Supreme Court held that the "plaintiff must demonstrate that a reasonable person knowing of the risk would not have consented to treatment, and that the undisclosed risk actually materialized in harm ." 527 N.W.2d 553, 561 (Minn. 1995) (emphasis added). In K.A.C. , the defendant-doctor was infected with the human immunodeficiency virus (HIV) and suffered from open sores on his hands and forearms. Id. at 555. While infected, the doctor performed two gynecological procedures on the plaintiff. Id. The plaintiff and 335 other patients potentially exposed to the AIDS virus were advised to undergo testing; all who did so, including the plaintiff, tested negative for the HIV antibody. Id. at 557. The Minnesota Supreme Court affirmed summary judgment for the medical defendant because "the undisclosed, minuscule 'risk' of HIV exposure did not materialize in harm to [the] plaintiff because [she] tested negative for the HIV
*552 antibody." Id. at 561-62 (emphasis added). Similarly, here, the risks of mistakes from inexperience never materialized, precluding recovery under an informed-consent theory.
We have never upheld a recovery under an informed-consent theory when the undisclosed risk did not occur and cause harm to the patient. The risk presented by Dr. Khanna's inexperience was that he might fall below the standard of care performing the surgery. The jury, which the majority acknowledges was instructed properly, found Dr. Khanna not negligent. This verdict establishes that the undisclosed risk of mistakes due to inexperience in fact never materialized. The verdict is the death knell for Andersen's informed-consent claim. The majority errs by holding otherwise.
II. Dr. Khanna Owed No Duty to Disclose His Inexperience with the Specific Procedure.
There is a second, independent reason why Andersen's informed-consent claim was properly taken from the jury. The district court correctly ruled that Dr. Khanna had no duty to disclose that he had never previously performed the Bentall procedure. Dr. Khanna is a board-certified cardiothoracic surgeon who has performed numerous heart surgeries. One can often define a medical procedure narrowly enough to say that this particular procedure has not been done by this particular physician.
The majority creates a new, ill-defined duty to volunteer information regarding the physician's experience. I would not go there. The legislature detailed the disclosure requirements for informed consent in Iowa Code section 147.137 (2018). Section 147.137 provides,
A consent in writing to any medical or surgical procedure or course of procedures in patient care which meets the requirements of this section shall create a presumption that informed consent was given. A consent in writing meets the requirements of this section if it:
1. Sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, or disfiguring scars associated with such procedure or procedures, with the probability of each such risk if reasonably determinable.
Iowa Code § 147.137. In Pauscher v. Iowa Methodist Medical Center , we described section 147.137 as "[t]he most definitive statement of public policy" on informed consent and as "a plain statement of the [disclosure] requirements." 408 N.W.2d 355, 360-61 (Iowa 1987). The statute does not require disclosure of physician-specific information such as the doctor's success rate or number of times he or she has performed the procedure. I would not add disclosure requirements that the legislature chose to omit.
In Doe v. Johnston , we said that "truly informed consent must be based on knowledge of reasonably available treatment alternatives." 476 N.W.2d 28, 31 (Iowa 1991). The plaintiff contracted "the dread disease AIDS" from a blood transfusion during hip replacement surgery. Id. at 30. The fighting issue at trial was whether the surgeon "breached the standard of medical care by failing to warn Doe of the risk of acquiring AIDS through a blood transfusion or ... [by] failing to advise him of the possibility of self-donating the necessary units of blood." Id. The jury found the surgeon not negligent, and we affirmed the trial court's denial of Doe's motion for a directed verdict or JNOV because he failed to prove such disclosures were required as a matter *553 of law. Id. at 31-32. We did not mention section 147.137, but the availability of ways to reduce the risk of the hip replacement surgery by securing safer blood for transfusion fits comfortably within the statutorily required disclosure of the "known risks ... of the procedures." That is different from the physician's personal experience.
We have never previously held the physician must disclose his or her personal experience or lack thereof in an informed-consent case. Most courts reject such a requirement. See, e.g. , Duffy v. Flagg , 279 Conn. 682, 905 A.2d 15, 20-21 (2006) (rejecting argument that a physician's prior experience with vaginal birth after cesarean section was relevant to an informed-consent claim because the only required disclosures are the nature of the procedure, its risks and anticipated benefits, and alternatives to the procedure); Ditto v. McCurdy , 947 P.2d 952, 958 (Haw. 1997) ("declin[ing] to hold that a physician has a duty to affirmatively disclose his or her qualifications or the lack thereof to a patient" and noting that "this is a matter best left to the legislature, and ... the board of medical examiners"); Wlosinski v. Cohn , 269 Mich.App. 303, 713 N.W.2d 16, 20 (2005) ("As a matter of law, we hold that a physician's raw success rates do not constitute risk information reasonably related to a patient's medical procedure" that a physician must disclose to a patient.); Abram v. Children's Hosp. of Buffalo , 151 A.D.2d 972, 542 N.Y.S.2d 418, 419 (1989) (noting that the cause of action for lack of informed consent has been statutorily defined and concluding it does not "require disclosure of qualifications of personnel providing ... treatment"); Foard v. Jarman , 326 N.C. 24, 387 S.E.2d 162, 167 (1990) (acknowledging that "[t]he statute imposes no affirmative duty on the health care provider to discuss his or her experience" and declining to impose such a duty); Duttry v. Patterson , 565 Pa. 130, 771 A.2d 1255, 1259 (2001) ("[W]e hold that information personal to the physician, whether solicited by the patient or not, is irrelevant to the doctrine of informed consent."). I would follow this well-developed body of precedent.
The majority instead relies on Johnson ex rel. Adler v. Kokemoor , 199 Wis.2d 615, 545 N.W.2d 495 (1996), which is readily distinguishable. That court affirmed evidentiary rulings allowing evidence of the surgeon's lack of experience with the specific procedure (which he had never performed previously) only after he had misled the patient by telling her falsely that he had performed the surgery she required dozens of times. Id. at 499.
Regardless, today's decision should be limited to its facts-requiring disclosure of the physician's inexperience only when the procedure is extraordinarily complicated and the physician has never performed it.[7] The problem will be drawing the line on when and what physicians now must disclose about their personal experience. Is disclosure required if the physician has only performed the procedure twice previously? Ten times? Is the physician required to disclose that other specialists in his or her group have greater experience? What about similar procedures? Do the outcomes matter? What if the outcomes depend on variables unrelated to surgical skill, such as the age or health of the other patients? Who decides what must be disclosed? Today's decision raises many more questions than it answers. See Jennifer Wolfberg, Comment, *554 Two Kinds of Statistics, the Kind You Look Up and the Kind You Make Up: A Critical Analysis of Comparative Provider Statistics and the Doctrine of Informed Consent , 29 Pepp. L. Rev. 585, 596 (2002) (criticizing Kokemoor for raising "[c]ountless questions").
And how would the physician disclose to a new patient the outcomes of his or her other patients' surgeries without violating statutes requiring confidentiality? See Iowa Code § 622.10 (physician-patient privilege); Willard v. State , 893 N.W.2d 52, 63-64 (Iowa 2017) (holding patient safety net records were nondiscoverable and inadmissible under the morbidity and mortality privilege codified in Iowa Code §§ 135.40 -.42); Carolan v. Hill , 553 N.W.2d 882, 886-87 (Iowa 1996) (discussing broad peer review privilege in Iowa Code section 147.135(2) ); see also 45 C.F.R. § 164.502 (2013) (Health Insurance Portability and Accountability Act of 1996 (HIPAA) Privacy Rule establishing protections for confidentiality of health information). Will physicians face a Hobson's choice between disclosing confidential information or risking an informed-consent claim for failing to do so?
I foresee that any patient with a bad outcome will now bring informed-consent claims that must go to the jury whenever the physician failed to disclose his or her specific experience and success rate on the procedure. This will further increase costs of healthcare burdening Iowans. The legislature can have the last word and should overrule this ill-advised decision.
For these reasons, I respectfully dissent from sections IV and VI of the majority opinion.
Cady, C.J., and Mansfield, J., join this concurrence in part and dissent in part.

Plowman was legislatively abrogated on other grounds this year. See S.F. 2418, 87th G.A., 2d Sess. § 118 (Iowa 2018) (2018 Iowa Legis. Serv. S.F. 2418 (West 2018)) (to be codified at Iowa Code § 613.15B).

The majority notes that "[t]he record reveals a Bentall heart procedure is a very complicated procedure. The experts characterized a Bentall heart procedure as being harder to perform than a heart transplant."